# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1058

_____

| | | |
|---|---|---|
| Philander Jenkins, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| County of Hennepin, Minnesota, | * | |
| | * | Appeal from the United States |
| Defendant/Appellee, | * | District Court for the |
| | * | District of Minnesota. |
| City of Minneapolis, Minnesota; | * | |
| Jindra Officer Jeffrey, in his official | * | |
| and individual capacities, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Margaret Pedersen, in her official | * | |
| and individual capacities, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: November 11, 2008
Filed: February 25, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Philander Jenkins filed a § 1983 action against Margaret Pedersen, Hennepin County, and others, alleging that he received constitutionally inadequate medical care while incarcerated at the Hennepin County Adult Detention Center (Detention Center) in 2003. The district court[1] granted summary judgment to Pedersen and the County, and Jenkins appeals. We affirm.

I.

On May 21, 2003, officers from the Minneapolis Police Department executed a search warrant at a residence where Jenkins was present. Jenkins was arrested for possession of a controlled substance. He claims that one of the officers kicked him in the jaw during the course of the arrest.[2] The officers transported Jenkins to the Detention Center, where he remained until May 28, 2003.

Upon arrival at the Detention Center, Jenkins was escorted to the sally port, where a deputy asked him a series of questions and documented his responses on a medical screening form. Because Jenkins said that he had been injured in the last twenty-four hours, he was scheduled to see an intake nurse before admission to a housing unit. Approximately three hours later, Stephanie Horobin, a licensed registered nurse, assessed Jenkins's condition. Nurse Horobin documented that Jenkins had a bump and an abrasion on the left side of his head. She noted that there was no swelling and that Jenkins appeared to have an active range of motion in his jaw. In response to Jenkins's complaints of pain, Nurse Horobin recorded that she gave him ibuprofen tablets and instructed him to call the Detention Center nurse line

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]Jenkins settled his claims against the arresting officer and the City of Minneapolis.

if his symptoms worsened. Nurse Horobin did not perform a physical examination of Jenkins's jaw, however, and Jenkins claims that she was indifferent to his pleas for relief. Jenkins asserts that, contrary to Nurse Horobin's written assessment, there was visible swelling in his jaw. He also denies receiving any over-the-counter pain medication or follow-up instructions.

Jenkins claims that from May 21 to May 28 he repeatedly requested medical attention from the deputies and nursing staff, through personal communication and use of the Detention Center nurse line—a system that allowed inmates to contact a nurse by telephone during certain regularly scheduled hours. Jenkins's medical chart and the nurse line call log reflect a single call to the nurse line, on May 26. Licensed registered nurse Mary Brain handled that call. She recorded Jenkins's complaints that he had been kicked in the head by police, that his jaw was hurt and could not be opened, and that over-the-counter medication was not alleviating his pain. Because Jenkins's injury had at that point persisted for several days, Nurse Brain concluded that the situation was not urgent, and she placed Jenkins on a list to see a nurse the next day.

Carolyn Martin, a licensed practical nurse, saw Jenkins on May 27. Jenkins told his story to Nurse Martin and informed her that he could not blow his nose or chew food. Nurse Martin observed that Jenkins's jaw was swollen and that he was unable to open his mouth all the way. She noted on his medical chart her intent to refer him to sick call, where he could see a doctor. That afternoon, Nurse Martin discussed Jenkins's condition with Margaret Pedersen, a licensed registered nurse who supervised the Detention Center nursing staff. Based on Nurse Martin's report, Supervisor Pedersen decided that Jenkins should be sent to Hennepin County Medical Center (HCMC) for an X-ray "within the next day or two."

It is not clear whether Supervisor Pedersen's decision actually delayed Jenkins's treatment. Nurse Martin testified that she could not remember all the details

of her interaction with Jenkins. Based on her documentation in Jenkins's medical chart, Nurse Martin testified that she "probably felt like his jaw was broken or [he had] something going on." She also testified that she thought he should be sent to HCMC for an X-ray and that Supervisor Pedersen told her not to send him right away.

The next day, May 28, Jenkins was sent to HCMC for an X-ray. The examining nurse recorded that Jenkins's pain was a five on a scale of ten and that ibuprofen had given him mild relief. Jenkins claims that those observations were inaccurate, and he characterizes his pre-operative pain as consistently ten out of ten. The X-ray revealed a nondisplaced fracture of Jenkins's left mandible. Jenkins underwent out-patient surgery that same day and thereafter returned to the Detention Center. Since the surgery, Jenkins has complained of numbness and discomfort in his jaw.

Jenkins sued Supervisor Pedersen and Hennepin County, claiming that his medical treatment violated the Eighth Amendment. Jenkins claimed that Supervisor Pedersen personally acted with deliberate indifference to his serious medical needs when she failed to immediately send him to the emergency room, and he also argued that Supervisor Pedersen was responsible for unconstitutional policies or customs that delayed his treatment. For this latter claim, Jenkins relied on Nurse Martin's testimony about the conditions at the Detention Center during her 1998-2003 tenure at the facility. Concluding that Supervisor Pedersen was not deliberately indifferent and that Jenkins had not established the existence of unconstitutional policies or customs that adversely affected his medical care, the district court granted summary judgment to Supervisor Pedersen and Hennepin County.

## II.

A district court's grant of summary judgment is reviewed *de novo*. Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). We will uphold summary judgement if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor." Roeben, 545 F.3d at 642.

Jenkins contends that Supervisor Pedersen, in both her individual and official capacities, failed to provide him with constitutionally adequate medical care. To establish that Pedersen personally violated his Eighth Amendment rights, Jenkins must show that he had an objectively serious medical need and that Pedersen was deliberately indifferent to that need. Johnson v. Hamilton, 452 F.3d 967, 972-73 (8th Cir. 2006). Jenkins's claims against Pedersen in her official capacity are actually claims against Hennepin County. See Drake v. Koss, 445 F.3d 1038, 1042 n.2 (8th Cir. 2006) (citing Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)). To prevail on those claims, Jenkins must demonstrate "that there was a policy, custom, or official action that inflicted an actionable injury." Johnson, 452 F.3d at 973.

"Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Viewing the facts in the light most favorable to Jenkins, we conclude that he has failed to produce sufficient evidence that Pedersen was deliberately indifferent to his medical needs.

Likewise, Jenkins cannot establish the existence of a policy or custom of deliberate indifference at the Detention Center.

III.

We turn first to Jenkins's claim that Supervisor Pedersen personally acted with deliberate indifference. Although we assume that Jenkins's fractured jaw was a serious medical need, it is undisputed that he was treated within a week of his arrival at the Detention Center. The gravamen of his complaint, therefore, is that he should have been treated earlier and that the unnecessary delay caused him to suffer.

There is no evidence that Supervisor Pedersen was even aware of Jenkins's presence before May 27, when Nurse Martin met with her to discuss his condition.[3] At that time, Nurse Martin related Jenkins's complaints about the source and nature of his injury. Supervisor Pedersen knew that Jenkins could not open his jaw completely and that he was unable to blow his nose or chew. We also presume that Nurse Martin communicated her impression that the situation was urgent and that an X-ray was needed immediately.

Supervisor Pedersen's response—deciding that Jenkins should be sent for an X-ray in "a day or two"—does not reflect deliberate indifference. Pedersen testified that, in her experience, many sprains and fractures do not require immediate medical attention. Her decision to briefly postpone an X-ray (ultimately for less than twenty-

---

[3]Jenkins claims that the district court failed to adequately consider the facts surrounding his intake examination, arguing that his injury should have been apparent to Nurse Horobin and that her failure to conduct a proper examination demonstrated deliberate indifference. We note, however, that Jenkins did not name Nurse Horobin as a defendant in this lawsuit, and there is no evidence that Supervisor Pedersen knew anything about Jenkins's intake examination until at least May 27, 2003. The factual dispute Jenkins cites, therefore, is not material to the summary judgment issues here.

four hours) reflects a medical judgment that Jenkins's injury, though possibly serious, was not urgent. That conclusion is supported by the fact that Jenkins cannot show that the one-day delay was detrimental to his recovery. Moreover, even if the better medical practice would have been to expedite Jenkins's treatment or provide more effective pain relief during the interim, there is no evidence that Pedersen's failure to order these measures was anything more than negligence. "Mere negligence does not rise to a constitutional violation." Johnson, 452 F.3d at 973. Thus, the district court did not err when it granted summary judgment on Jenkins's claims against Pedersen in her individual capacity.

IV.

Jenkins also raises claims against Hennepin County, arguing that Supervisor Pedersen, in her official capacity, violated his constitutional rights by establishing or condoning policies or customs that institutionalized an attitude of deliberate indifference. He maintains that those policies or customs allowed him to be processed into the Detention Center and denied treatment for a week, notwithstanding his serious injury. The district court conducted a thorough, well-considered analysis of Jenkins's policy and custom arguments, and we agree with its conclusions.

We have observed an important distinction between claims based on official policies and claims based on customs. Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability. See McGautha v. Jackson County, 36 F.3d 53, 56 (8th Cir. 1994). To establish the existence of a policy, Jenkins must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). For Jenkins to prevail on his Eighth Amendment claim, he must also show that the policy was unconstitutional and that it was "the moving force" behind the harm that he suffered. Id. (quotation omitted).

Jenkins's policy arguments fail because he has not pointed to any officially accepted guiding principle or procedure that was constitutionally inadequate. Jenkins contends, for example, that the Detention Center's intake procedures were insufficient to identify certain types of serious injuries; he also maintains that implementation of the nurse line prevented inmates from receiving prompt responses to their requests for medical treatment.[4] Under the Constitution, however, the range of acceptable medical care is broad. Jailers bear only the responsibility to identify medical needs that are "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)); see also Jones v. Minnesota Dep't of Corr., 512 F.3d 478, 483 (8th Cir. 2008) ("The question . . . is not, in hindsight, whether [the plaintiff] had a serious medical condition, but rather, whether the condition was so obvious that a layperson would have easily recognized the need for medical treatment."). Similarly, a policy that results in delayed treatment is not unconstitutional unless it evinces deliberate indifference to serious medical needs. The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish. See, e.g., Johnson, 452 F.3d at 973 (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997) (concluding that prison doctors were not deliberately indifferent, even though they did not act as quickly as hindsight perhaps suggested that they should have). Although Jenkins might be able to show that the Detention Center's delivery of medical services could be improved, he cannot establish that any of its official policies reflected deliberate indifference to serious medical needs.

Finally, Jenkins argues that the delay in his treatment was attributable to a variety of unconstitutional customs. In contrast to the evidence required to establish

_____

[4]Although Jenkins characterizes the nurse line as "the most serious example of institutionalized indifference" at the Detention Center, it is undisputed that inmates had alternative means of obtaining assistance for their emergency medical needs, such as talking to deputies or using the emergency call button in their cells.

an official policy, we have emphasized that a custom can be shown only by adducing evidence of a "continuing, widespread, persistent pattern of unconstitutional misconduct." Mettler, 165 F.3d at 1204. A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it. Id. From this standard it follows that "[l]iability for an unconstitutional custom . . . cannot arise from a single act." McGautha, 36 F.3d at 57.

To support his custom arguments, Jenkins presented Nurse Martin's testimony that she perceived a variety of shortfalls in the Detention Center's provision of medical care. As the district court correctly determined, however, Nurse Martin's testimony was insufficient to establish the pervasive pattern of constitutional violations required to sustain liability. Morever, the evidence does not support the inference that Pedersen was aware of the alleged inadequacies and that she acted with deliberate indifference or tacitly authorized misconduct. Accordingly, the district court properly granted summary judgment to Hennepin County and Supervisor Pedersen in her official capacity.

The judgment is affirmed.

_____