**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

No. 16-4010
———————

RICHARD JOH,
                    Appellant

v.

DR. PAUL SUHEY, D.O.; DR. WILLIAM YOUNG; NURSE FREEMAN;
NURSE SUPERVISOR MARLENE MAJOR;
PHYSICIAN ASSISTANT BERNARD; ASHLEY BACHMAN, LPN;
TAMMY LINGLE; CLINTON COUNTY CORRECTIONAL FACILITY
———————————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 15-cv-02286)
District Judge:  Honorable William W. Caldwell
———————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 22, 2017
Before:  AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 26, 2017)
———————

OPINION[*]
———————

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Richard Joh appeals the District Court's order dismissing his amended complaint for failure to state a claim. For the reasons below, we will affirm the District Court's order.

In the District Court, Joh alleged that, on December 4, 2013, he injured a finger playing volleyball while incarcerated at the Clinton County Correctional Facility (CCCF). Nurse Freeman initially refused to see him but an hour later gave him two ibuprofen tablets. The next day, Nurse Supervisor Marlene Majors saw him, called two doctors, and scheduled an X-ray. After reading the X-ray, she informed Joh that he had fractured his finger. On December 10, Physician Assistant Bernard ordered that Joh's finger be "buddy-taped," i.e., taped to the finger next to it. Nurse Majors then ordered another X-ray. On December 13, Dr. Suhey examined the new X-ray, determined that the fracture needed only taping, and ordered that the taping continue for one month.

A month later, on January 8, 2014, the taping was removed and Joh's finger was "'disfigured,' 'limp,' and 'unusable.'" A week later, Joh was examined by Dr. Young, who "did nothing." On March 10, one day after filing a grievance challenging his medical treatment, Joh was transferred to another facility. After he was released from prison, Joh went to a doctor who informed him that the finger was dislocated and that he needed surgery. Joh had the corrective surgery in August 2015.

Joh argued that the Appellees' actions constituted deliberate indifference to his serious medical needs. He also contended that the CCCF failed to properly train and supervise its medical personnel. In order to state a claim under the Eighth Amendment for denial of medical care, Joh needed to allege that the Appellees were deliberately

2

indifferent to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

A medical need is serious if it is "one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity

for a doctor's attention."  Monmouth Cty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326,

347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd,

649 F.2d 860 (3d Cir. 1981)).  Joh's allegations of a fractured finger state a claim of a

serious medical need.  Thus, the issue is whether the Appellees acted with deliberate

indifference to that need.  Deliberate indifference can be shown by a prison official

"intentionally denying or delaying access to medical care or intentionally interfering with

the treatment once prescribed."  Estelle, 429 U.S. at 104-05.

Nurse Freeman

As to Nurse Freeman, Joh alleged that she initially refused to see him but gave

him pain medicine an hour later.[1]  This alleged brief delay in seeing him after his initial

injury does not state a claim for deliberate indifference.  Cf. Jenkins v. Cty. of Hennepin,

Minn., 557 F.3d 628, 632 (8th Cir. 2009) (nurse's one-day postponement of X-ray for

---

[1] In his original complaint, Joh alleged only that Nurse Freeman interviewed him and characterized the injury as "aching."  Compl. at ¶15.  In his amended complaint, Joh alleged that after his injury, he ran to the medical department and Nurse Freeman slammed the door in his face and refused to treat him.  Joh's amended allegations conflict with a letter to the Pennsylvania Prison Project Joh submitted to the District Court.  See Letter at docket #11.  In the letter, Joh asserted that after injuring his finger, he ran to exit the gym to try to visit the infirmary but that a correctional officer refused to unlock the door.  Other inmates then banged on the door to the gym to alert the nurse who slammed the infirmary door shut.  In this latter scenario, it is not clear that Nurse Freeman was aware of the details of Joh's injury when she closed the infirmary door.  This factual conflict does not influence our determination that the District Court did not err in dismissing this claim.  Even reading Joh's allegations in the light most favorable to him, he has failed to state a claim.

3

broken jaw did not reflect deliberate indifference); Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) (no evidence that one-month delay in receiving X-ray after tentative diagnosis of fractured finger was anything more than negligence); Spruill v. Gillis, 372 F.3d 218, 223-25, 237 (3d Cir. 2004) (delay of two to three days before examination of severe back and leg pain did not state a claim of deliberate indifference against prison guard); Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (no evidence that officers thought prisoner needed immediate treatment or that temporary denial of care exposed prisoner "'to undue suffering or threat of tangible residual injury'" (quoting Monmouth Cty., 834 F.2d at 346)). In order to be found liable under the Eighth Amendment, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). By not treating Joh's broken finger within an hour, Nurse Freeman did not disregard an excessive risk to his safety. Joh does not allege that the brief delay in treatment led to any serious harm.

In his brief, Joh argues that because Nurse Freeman charged him for the pain medicine and that charge was later refunded, the charge should not have been permitted initially. This, he contends, supports an inference that Nurse Freeman was being punitive or denied him treatment based on its cost. We disagree. That the fee was refunded does not warrant an inference that it was wrongfully and punitively applied by Nurse Freeman or that the brief delay in care was based on concerns over cost.

Appellees Majors, Bernard, and Suhey

4

Joh claims that several other Appellees are also liable for their treatment of his finger. With respect to medical decisions, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). A federal court will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (alteration in original) (quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977)).

With respect to Head Nurse Majors, Joh asserted that she ordered two X-rays for Joh and determined that he had a fractured finger. The only allegation against PA Bernard is that he taped Joh's finger on December 10. As for Dr. Suhey, Joh alleged that he read the X-ray and determined that the finger was fractured but would only require taping. Joh asserted that these three Appellees were deliberately indifferent for failing to recognize the seriousness of his injury and provide treatment to avoid permanent damage. However, Joh has not alleged any facts showing that Appellees' alleged failure to treat his finger fracture properly was deliberately indifferent as opposed to merely negligent or based on a difference of medical opinion. See Estelle, 429 U.S. at 106 (allegation of negligence does not state Eighth Amendment claim); see also Spruill, 372 F.3d at 235 (allegations of medical malpractice not sufficient for Eighth Amendment claim). Joh argues in his brief that he has pleaded more than a mere disagreement of opinion because the treatment he received was ineffective. However, that a treatment turned out to be ineffective does not mean it was outside the range of appropriate treatments at the time.

<u>Dr. Young</u>

In his original complaint, Joh's only allegation regarding Dr. Young is that he was examined by him. In dismissing the original complaint, the District Court noted that Joh had not alleged what treatment he requested from, or was denied by, Dr. Young. In his amended complaint, Joh alleged that Dr. Young examined him on January 15, 2014, and "did nothing." But Joh did not explain further. For example, Joh did not allege that Dr. Young indicated no further treatment was necessary or appropriate. Joh did not allege that he told Dr. Young that he was in pain or that he asked what could be done for his finger. He does not describe what Dr. Young said to him regarding why nothing further would be done for his finger.

In order to state a claim, a plaintiff must make sufficient factual allegations to allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). It is not enough for a plaintiff to offer only conclusory allegations or a simple recital of the elements of a claim. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Despite being given an opportunity to amend his complaint, Joh did not allege sufficient facts to state a claim that Dr. Young's inaction was a result of deliberate indifference and not mere negligence or a difference of medical opinion. <u>See</u> <u>Estelle</u>, 429 U.S. at 106. He did not allege any facts to support an inference that Dr. Young knew of and disregarded an excessive risk to Joh's safety. <u>Farmer</u>, 511 U.S. at 836-37.

<u>Bachman, Lingle, and CCCF</u>

6

In his brief, Joh does not argue in support of his claims against Bachman, Lingle or CCCF.  Moreover, because Joh has failed to state an underlying constitutional claim against the individual Appellees, he cannot state a claim against CCCF for failure to train its medical personnel.  See Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996) (if no underlying constitutional violation, failure to train claim will not stand).  And although he listed Ashley Bachman and Tammy Lingle in the caption, he made no allegations against them within the amended complaint.

Conclusion

The District Court did not err in concluding that Joh failed to state a claim against the Appellees.  For the above reasons, we will affirm the District Court's judgment.