**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 21, 2010[*]
Decided October 21, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 10-1536

| | |
|---|---|
| DONALD L. GREEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 07-3030 |
| | |
| ROGER E. WALKER, JR., et al. | Harold A. Baker, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Donald Green, a Illinois inmate, appeals the grant of summary judgment for various prison officials in his action under 42 U.S.C. § 1983, claiming retaliation, deliberate indifference, and violations of due process. We affirm.

Prison officials disciplined Green in April 2005 for possessing other inmates' photographs, with their names and identification numbers on the back, in violation of the prison's rule prohibiting the unauthorized possession of other inmates' personal

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

information. Green was punished again in June 2006 for possessing the legal materials of fellow inmates in violation of the same rule and another that prohibits the possession of other inmates' property. The first time, Green received a one-month demotion to C-grade status (a loss of privileges) and one-month commissary restriction, and the second time he received seven days of segregation and two months of C-grade, and he lost his job assignment.

After the prison rejected his grievances protesting these disciplinary actions and prison conditions, Green filed this § 1983 lawsuit against prison officials, arguing, as relevant here, that the officials retaliated against him for filing too many grievances, acted with deliberate indifference to conditions of excessive heat and inadequate ventilation, and violated his right to due process by holding unfair disciplinary hearings. He also argued that he was legally entitled to possess other inmates' legal materials, vaguely asserting that it was wrong for the prison to confiscate, and punish him for possessing, the materials.

The district court granted in part, and denied in part, summary judgment for the defendants. The court found, first, that Green's punishment was not severe enough to deprive him of a liberty interest in violation of the Due Process Clause. The court next rejected Green's retaliation claim because his only evidence of retaliation—a supervisor's affidavit claiming that the supervisor "had learned" of retaliatory motive from undisclosed sources—was inadmissible hearsay. And in any event, the court also found that Green failed to provide evidence that retaliation was the cause of his punishment. The court also found that Green's description of excessive heat and inadequate ventilation in his cell did not reflect a sufficiently serious deprivation or deliberate indifference to the extreme conditions. The court, however, denied summary judgment to the prison officials on Green's vaguely worded claim that defendants' confiscation of his papers and legal books violated his First Amendment rights; the court explained that the prison officials had not justified the reasons behind their rules prohibiting the possession of other inmates' personal information and property, and that a fuller record needed to be made. After further proceedings, the court granted summary judgment on this claim, finding that the prison's rule prohibiting possession of other inmates' property was reasonably related to its objectives of safety and security and that Green had other legitimate avenues for obtaining legal documents and books.

On appeal Green challenges the grant of summary judgment against him on his retaliation claim, arguing generally that the district court was wrong to reject the supervisor's affidavit as lacking in credibility. But Green misapprehends the basis of the court's ruling; the court did not weigh the affidavit's credibility, but instead properly excluded it as hearsay because it relayed out-of-court statements by unknown sources that were offered to prove the truth of the matter asserted (the retaliation). *See Gunville v. Walker*,

583 F.3d 979, 985 (7th Cir. 2009).  Without this affidavit, Green cannot point to any evidence that supports an inference of retaliation.

Green next contends that his disciplinary hearings violated his right to due process because he was not allowed to present evidence (at either hearing) and because the prison's rule prohibiting possession of other inmates' personal information is vague.  But as the district court explained, Green's argument fails because short-term segregation, grade demotions, loss of commissary privileges, and loss of prison employment are insufficient hardships to deprive him of a liberty interest in violation of the Due Process Clause.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Lekas v. Briley*, 405 F.3d 602, 610, 613 (7th Cir. 2005); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005).

Green also takes issue with the district court's conclusion that there was no First Amendment violation when his legal papers, books, and administrative materials were confiscated and he was punished for having them.  Green does not specifically address this conclusion, and instead maintains that he has a right to act as a jailhouse lawyer and to possess legal materials, and that the prison's actions violated *due process*.  We understand Green to be asserting a general right of access to the courts, but this right does not confer unconditional privileges to retain legal documents belonging to others.  The right of access to courts is violated only when a prisoner is denied access and suffers actual injury as a result.  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).  Because Green did not show any such injury, this claim must fail.

Green also challenges the district court's grant of summary judgment on his Eighth Amendment claims regarding the conditions of his confinement.  He argues that the district court wrongly discounted his evidence regarding the heat in his cell during the summer of 2006—his own testimony and the affidavit of an asthmatic inmate who complained to officials about respiratory problems—as not raising an inference that prison officials were deliberately indifferent to extreme conditions.  But the district court properly found that Green's evidence failed to show that the heat was serious enough to deny the "minimal civilized measure of life's necessities" or that prison officials were deliberately indifferent to the heat.  *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).  Green has not pointed to any evidence reflecting that the heat carried on at extreme levels for an extended duration or that he suffered any harm from the heat.  *See Chandler v. Crosby*, 379 F.3d 1278, 1290-94 (11th Cir. 2004); *Dixon v. Godinez*, 114 F.3d 604, 642 (7th Cir. 1997).  Moreover, that officials placed a fan in the hallway to help keep the air moving belies the suggestion that they were deliberately indifferent to the effects of the heat.

Green also contests the grant of summary judgment on his claim that the prison's decision to bolt cell windows shut during winter months violated the Eighth Amendment.

Noting a comment by a grievance officer that bolting windows increased inmates' exposure to airborne health risks, he reiterates that the prison's inadequate ventilation constituted deliberate indifference. But even if the ventilation system were inadequate, summary judgment was appropriate because Green presented only conclusory allegations that inadequate ventilation caused disease and respiratory problems. *See Sain v. Wood* 512 F.3d 886, 894 (7th Cir. 2008); *Dixon*, 114 F.3d at 645. For instance, Green introduced no evidence to refute an affidavit from the warden attesting that the Illinois Department of Corrections' sanitation department determined that air flow would still be adequate with the windows bolted.

Finally, Green contests the district court's denial of his request to have counsel recruited to represent him because, he argues, this case was too complex, legally and factually, for him to be able to fairly litigate his claims alone. When faced with a request to recruit counsel, a district court must consider, among other things, whether the plaintiff has demonstrated an ability to litigate his case. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). The court here did not abuse its discretion in denying Green's request. The court noted that Green's complaint and pleadings were "drafted better than many documents the court sees filed by licensed attorneys" and that he comprehended the law regarding his claims and could effectively press his interests and conduct discovery. The court's analysis meets the standard set forth in *Pruitt*.

AFFIRMED.