12-1806-cv
*Walker v. Schult*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2012

(Argued:  January 30, 2013      Decided:  May 23, 2013)

Docket No. 12-1806-cv

_____

ELLIS WALKER,

*Plaintiff-Appellant,*

v.

DEBORAH G. SCHULT, Warden, FCI Ray Brook, RUSSELL PERDUE, Warden,
FCI Ray Brook, DAVID SALAMY, Unit Manager, FCI Ray Brook,
SEPANEK, Counselor, FCI Ray Brook, DAVID PORTER, Associate
Warden, FCI Ray Brook, ANNE MARY CARTER, Associate Warden, FCI
Ray Brook, STEVEN WAGNER, Associate Warden, FCI Ray Brook,
J.L. NORWOOD, Regional Director, HARLEY LAPPIN, Director,
Bureau of Prisons,

*Defendants-Appellees.*

_____

Before:
        WESLEY and CHIN, *Circuit Judges*,
        and LARIMER, *District Judge*.[*]

    Appeal from a judgment of the United States

District Court for the Northern District of New York (Kahn,

_____
      [*]      The Honorable David G. Larimer, of the United States
District Court for the Western District of New York, sitting by
designation.

*J.*), entered on March 27, 2012, granting defendants-appellees' motion to dismiss plaintiff-appellant's complaint alleging that his conditions of confinement amounted to cruel and unusual punishment in violation of the Eighth Amendment.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

> JOHN D. CASTIGLIONE (Kyle L. Wallace, Noreen A. Kelly-Dynega, Natalie M. Georges, *on the brief*), Latham & Watkins LLP, New York, New York, *for Plaintiff-Appellant.*
>
> PAULA RYAN CONAN, Assistant United States Attorney (Charles E. Roberts, Assistant United States Attorney, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York, *for Defendants-Appellees.*

CHIN, *Circuit Judge*:

Plaintiff-appellant Ellis Walker brought this action below *pro se*, alleging that the conditions of his confinement in the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook") amounted to cruel and unusual punishment in violation of the Eighth Amendment. The United States District Court for the Northern District

of New York (Kahn, *J.*) granted defendants-appellees' motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Walker appeals.

We conclude that Walker's complaint plausibly alleged violations of his constitutional rights, except as to two defendants.  We therefore affirm in part and vacate in part and remand for further proceedings.

## BACKGROUND

### A.  *Factual Allegations*

The following facts are drawn from Walker's *pro se* complaint, and we assume them to be true for purposes of this appeal.  On November 18, 2008, while Walker was an inmate at FCI Ray Brook, he was placed in a six-man cell.  Compl. ¶ 1.  The cell was approximately 170 to 174 square feet in size, providing each prisoner with 28 to 29 square feet of total space, and "less than 6-square feet moving space," which was not enough space "to even turn or move in the 6-man cell."  *Id.* ¶ 4 & n.3.  In addition to the six prisoners, the cell contained their bunk beds, their belongings, two toilets, and two sinks.  *Id.* ¶¶ 4, 8, 19.  The prisoners were required to be in their cells each day

from approximately 9:15 p.m. to 7:00 a.m., and for 45-minute periods each mid-morning and mid-afternoon.  *Id.* ¶ 23.

Walker, who is 6'4" tall and weighs 255 pounds, was assigned to one of the top bunk beds for four months.  *Id.* ¶ 4 n.3.  The bed itself was only twenty-eight inches wide -- four inches narrower than what guards told Walker was the required width of beds -- which forced Walker "to sleep on his side; rotating back and forth."  *Id.* ¶ 7 & n.4.  There were no ladders to climb up to the top bunks; Walker had to climb onto a chair and then onto another inmate's locker to reach his bed.  *Id.* ¶ 8.  Once, when climbing up to his bed, Walker fell onto the chair, which "broke [his] fall to the floor."  *Id.* ¶ 9.  If, when climbing up to his bed, he knocked another inmate's property off a locker, it "would lead to arguments and possibly fights."  *Id.* ¶ 8.

Walker's cellmates included gang members, non-gang members, and men of different races.  *Id.* ¶¶ 5, 6, 11, 12.  Mixing inmates from different backgrounds caused "insurmountable problems," including fights, friction, and

violence throughout the prison. *Id.* ¶¶ 3, 5, 6, 11, 12. The "overcrowding, gang activities, violence . . . [and] fights" in the cell placed Walker "in a situation to kill or be killed." *Id.* ¶ 12. Further, because the cell was so crowded and noisy, the prison guards would not know when prisoners were fighting unless another prisoner alerted them. *Id.* ¶ 13.

Walker's five cellmates stayed up all night watching television and playing games, which led to "hollering, screaming and sometimes fights." *Id.* ¶ 15. In addition, his cellmates "constantly" had other prisoners running into the cell "using the toilet/sink and making noise." *Id.* ¶ 22. Walker got "almost no sleep" and was "tired most of the time," because "[t]he noise inside the cell [was] constant and loud." *Id.* ¶ 14. Walker got so little sleep that there was "no way [he] could work on a job 8 hours/day without hurting himself or someone else." *Id.* ¶ 16.

Walker's cell was also unsanitary, with so much "urine . . . on the floor and sometimes . . . on the toilet" that the toilet required cleaning "[a]t least 15-20

times per day." *Id.* ¶¶ 19, 20. Walker's cellmates warned him that "urin[e] or defecat[ion] would splatter to the floor." *Id.* ¶ 19. The inmates were not provided sufficient cleaning supplies or equipment to keep the toilet and surrounding area clean. *Id.* ¶¶ 18, 20. Thus, Walker had to use his personal soap and dishwashing liquid to clean the toilets and cell. *Id.* ¶¶ 18-20 & n.5.

Finally, Walker's cell was inadequately ventilated, such that "during the winter the cell [was] cold and [during the] summer months extremely hot and quite difficult to breathe." *Id.* ¶ 21.[1]

---

[1] In Walker's opposition to defendants' motion to dismiss, he further alleged:

> The ventilation in the six man [cell] was the same as it was when the six man cell was a two man cell. The ventilation was so bad in the summer months [that] Schult[] would send out memo[]s to the units to have the food slot[] door[s] open so air could flow through the cells. In the winter the cell windows have ice two to four inch[e]s thick on the inside of the six man cell. Plaintiff had to make his bunk short because if not my feet would freeze from the ice that came out of the window frame and the bunk was maybe six inch[e]s from the windows. The cell stayed cold and everybody in the six man cell would go to bed with hats on or fully dressed in the winter months.

Walker still resided in the six-man cell when he filed his complaint on March 16, 2011 -- nearly twenty-eight months after having been placed there on November 18, 2008.[2] For Walker, the experience of being in the six-man cell was "horrifying." *Id.* ¶ 23.

According to Walker, defendants were aware of and did nothing to remedy the conditions in his cell. FCI Ray Brook wardens Deborah G. Schult and Russell Perdue,[3] associate wardens David Porter, Anne Mary Carter, and Steven Wagner, unit manager David Salamy, and counselor Sepanek each "knew of the overcrowding, gang activities, [and] violence in the cells" and the physical danger that

---

Pl.'s Opp. at 11, *Walker v. Schult*, No. 11 Civ. 0287 (N.D.N.Y. Oct. 24, 2011), ECF No. 29. A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

[2] At some point after he filed the complaint, Walker was transferred from FCI Ray Brook to another institution, Allenwood Medium Federal Correctional Institution.

[3] On appeal, Walker explains that he named both Schult and Perdue in the complaint because the wardenship at FCI Ray Brook changed while he was incarcerated there. On February 13, 2011, Schult left FCI Ray Brook and Perdue became the new warden.

Walker faced.[4]  *Id.* ¶ 12.  Walker informed Schult, Sepanek,

Salamy, Porter, and Carter that his bed was too narrow for

him, but he received no response.  *Id.* ¶ 7.  Further,

defendants were "fully aware that the noise in the unit

[was] so loud and constant," *id.* ¶ 13, and that the cell

was inadequately ventilated, *id.* ¶ 21.  Finally, Sepanek,

whose job it was to issue cleaning supplies, failed to do

so.  *Id.* ¶ 18 n.5.

Walker pursued his administrative remedies, but

alleged that defendants interfered with and obstructed his

efforts to obtain relief.  *Id.* ¶¶ 24-27.

**B.   *Procedural History***

On March 16, 2011, Walker, proceeding *pro se*,

filed the instant action alleging that defendants violated

---

[4]     Although the complaint also named Bureau of Prisons director Harley Lappin and regional director J.L. Norwood, Walker does not appeal the dismissal of his claims against these two defendants.  We affirm the dismissal of his claims against Lappin and Norwood because he did not assert that they were personally involved in the alleged constitutional violations. *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

his constitutional rights while he was imprisoned at FCI Ray Brook.[5]

On August 25, 2011, defendants moved to dismiss the complaint based on (1) Walker's failure to exhaust administrative remedies; (2) Walker's failure to state a claim upon which relief may be granted; (3) Walker's failure to allege defendants' personal involvement in the constitutional violations; and (4) qualified immunity.

By report and recommendation filed on January 20, 2012, Magistrate Judge Randolph F. Treece recommended dismissing Walker's complaint for failure to state a claim, pursuant to Rule 12(b)(6). The Magistrate Judge noted that he was unable to properly assess whether Walker fully exhausted his available administrative remedies or whether defendants should be estopped from asserting failure to exhaust as an affirmative defense. With respect to

---

[5] Although Walker used the forms associated with civil actions under 42 U.S.C. § 1983 to file his complaint, the district court properly construed his claims -- asserted against federal officials -- pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) (noting that district court liberally construed plaintiff's § 1983 lawsuit as a *Bivens* action).

Walker's allegation that his cell lacked a ladder to access his top bunk bed, the Magistrate Judge recommended in the alternative granting the motion to dismiss on qualified immunity grounds. The Magistrate Judge also recommended dismissing the claims against Sepanek and Lappin for failure to serve them.[6]

---

[6] Walker received permission to proceed *in forma pauperis*. Generally, a *pro se* litigant proceeding *in forma pauperis* is entitled to rely on the U.S. Marshals Service to effect service. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [*in forma pauperis*] cases."); Fed. R. Civ. P. 4(c)(3); *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996) (a plaintiff's *in forma pauperis* status "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court"). The failure of the U.S. Marshals Service to properly effect service of process constitutes "good cause" for failure to effect timely service, within the meaning of Federal Rule of Civil Procedure 4(m). *See Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (reversing dismissal where the U.S. Marshals Service failed to effect timely personal service through no fault of the plaintiff). Here, the Bureau of Prisons returned unsigned requests for waivers of service on behalf of Sepanek and Lappin, explaining that Sepanek was on "extended medical leave" and Lappin had retired. Under these circumstances, it was error for the district court to dismiss Walker's claims against Sepanek and Lappin for failure to serve without considering whether Walker attempted to effect personal service on them through the U.S. Marshals Service and whether the Marshals' failure to serve them constitutes "good cause" for failure to effect proper service. *See id.* Walker does not contest the dismissal of his claims against Lappin. On remand, the district court shall consider whether Walker may be entitled to another opportunity to serve Sepanek.

Finally, the Magistrate Judge declined to address defendants' argument that all of Walker's claims should be dismissed for failure to allege that defendants were personally involved in the constitutional violations.

On March 27, 2012, the district court adopted the report and recommendation in full and dismissed the case.

This appeal followed.

## DISCUSSION

### A. Applicable Law

#### 1. Motions To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In exercising this review, our "task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

-11-

support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (citation and internal quotation marks omitted)).

Where, as here, the complaint was filed *pro se*, it must be construed liberally "to raise the strongest arguments [it] suggest[s]." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing

all inferences in the plaintiff's favor.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

## 2.   *The Eighth Amendment*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Although the Constitution does not require "comfortable" prison conditions, the conditions of confinement may not "involve the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and (2) subjectively, the defendant official acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety."  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted).

To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. *Rhodes*, 452 U.S. at 347; *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam). Thus, prison officials violate the Constitution when they deprive an inmate of his "basic human needs" such as food, clothing, medical care, and safe and sanitary living conditions. *Id.* (citation and internal quotation marks omitted). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted). Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "low cell temperature at night combined with a

-14-

failure to issue blankets" may establish an Eighth Amendment violation).

To meet the subjective element, the plaintiff must show that the defendant acted with "more than mere negligence." *Farmer*, 511 U.S. at 835. To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

### 3. *Qualified Immunity*

A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* at 2083 (citation and internal quotation marks omitted).  Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*  If an official's conduct did not violate a clearly established constitutional right, or if the official reasonably believed that his conduct did not violate such a right, then he is protected by qualified immunity.  *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012).

Although courts should resolve the question of qualified immunity at the "earliest possible stage in litigation," *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citation and internal quotation marks omitted), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009), "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary

judgment must accept the more stringent standard applicable to this procedural route," *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

**B.**   *Application*

We conclude that the district court erred by dismissing Walker's complaint for failure to state a claim. First, he plausibly alleged conditions that, perhaps alone and certainly in combination, deprived him of a minimal civilized measure of life's necessities.  Second, he plausibly alleged that defendants were deliberately indifferent to this deprivation.  Third, he plausibly alleged violations of clearly established rights.  We address each of these issues in turn.

**1.**   *The Conditions of Confinement*

Walker plausibly alleged that his conditions of confinement at FCI Ray Brook deprived him of the minimal civilized measure of life's necessities and subjected him to unreasonable health and safety risks.  He alleged that for approximately twenty-eight months, he was confined in a cell with five other men, with inadequate space and ventilation, stifling heat in the summer and freezing cold

-17-

in the winter, unsanitary conditions, including urine and feces splattered on the floor, insufficient cleaning supplies, a mattress too narrow for him to lie on flat, and noisy, crowded conditions that made sleep difficult and placed him at constant risk of violence and serious harm from cellmates.  Based on these allegations, we conclude that Walker has plausibly alleged cruel and unusual punishment in violation of the Eighth Amendment.

First, it is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment.  *See Gaston*, 249 F.3d at 164 ("We have held that an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold."); *see also, e.g.*, *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (claims that inmate was exposed to subfreezing temperatures for three months with ice forming in toilet bowl were sufficient to raise issues of fact for jury, even where prison officials gave inmate extra blanket).

Second, sleep is critical to human existence, and conditions that prevent sleep have been held to violate the

-18-

Eighth Amendment. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights.") (citing *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)); *see also, e.g., Wright v. McMann*, 387 F.2d 519, 521-22, 526 (2d Cir. 1967) (inmate stated Eighth Amendment claim by alleging he was "forced to sleep completely nude on the cold rough concrete floor and that the cell was so cold and uncomfortable that it was impossible for him to sleep for more than an hour or two without having to stand and move about in order to keep warm"); *Robinson v. Danberg*, 729 F. Supp. 2d 666, 683 (D. Del. 2010) (denying motion to dismiss Eighth Amendment claims based on allegations that "defendants took specific acts designed to deprive [plaintiff] of sleep").[7] Further, at least one court recently found that the condition of a prisoner's mattress may be so inadequate as to constitute

---

[7]    *Cf. Spivey v. Doria*, No. 91 C 4169, 1994 U.S. Dist. LEXIS 3527, at *32 (N.D. Ill. Mar. 24, 1994) (holding that pre-trial detainee failed to allege constitutional violation where he "alleged only that the lights and noise interfere[d] with his sleep not that he [wa]s unable to sleep or that the sleep deprivation ha[d] caused him any harm").

an unconstitutional deprivation. *See Bell v. Luna*, 856 F. Supp. 2d 388, 397-98 (D. Conn. 2012) (denying motion to dismiss where inmate lived for seven months with mattress that was torn, unstuffed, and smelled like mildew).

Third, we have long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment. *See Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981) (noting that prisoners are entitled to, *inter alia*, sanitation); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) (noting that the denial of "basic sanitation . . . is cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose." (citation and internal quotation marks omitted)).[8]  Indeed, unsanitary

---

[8]     *But see Jones v. Goord*, 435 F. Supp. 2d 221, 237 (S.D.N.Y. 2006) (evidence that several inmates urinated *on*, rather than *in*, the toilet reflected "isolated incidents of

-20-

conditions lasting for mere days may constitute an Eighth Amendment violation. *See, e.g.*, *Gaston*, 249 F.3d at 165-66 (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days); *Wright*, 387 F.2d at 522, 526 (placement of prisoner for thirty-three days in cell that was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, would violate the Eighth Amendment).

Further, the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement . . . ."); *see also, e.g.*, *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) ("The failure to

misbehavior, or simple inaccuracy, [that] do not signify a structural lack of proper hygiene as a result of double-celling").

-21-

regularly provide prisoners with . . . toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions." (internal quotations marks and citations omitted)). Availability of hygienic materials is particularly important in the context of otherwise unsanitary living conditions. *See, e.g.*, *MacDougall*, 473 F.2d at 978.

Fourth, conditions that place a prisoner at a "substantial risk of serious harm" from other inmates may constitute cruel and unusual punishment. *Jones v. Goord*, 435 F. Supp. 2d 221, 238 (S.D.N.Y. 2006); *see also Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." (citation, alteration, and internal quotation marks omitted)); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment."); *see also, e.g.*, *Villante v. Dep't of*

*Corr.*, 786 F.2d 516, 522-23 (2d Cir. 1986) (inmate could prevail on constitutional claim based on conditions of confinement if he could prove that "there was a pervasive risk of harm to him from other prisoners and that prison officials displayed deliberate indifference to the danger").

In dismissing Walker's complaint, the district court improperly "assay[ed] the weight of the evidence," *DiFolco*, 622 F.3d at 113, and failed to draw all reasonable inferences in Walker's favor. For example, the district court found that Walker's failure to indicate "the exact extent or duration of [his] exposure to unsanitary conditions" was fatal to his Eighth Amendment claim. Similarly, the court held that Walker's allegations of inadequate ventilation were insufficient because he did not provide any details about the temperatures in his cell. Such detailed allegations, however, are not required for a *pro se* complaint to survive a motion to dismiss. Moreover, Walker alleged that he was placed in the six-man cell on November 18, 2008 and was still there when he filed his complaint on March 16, 2011. He also alleged that it was

-23-

so hot during the summer that he had difficulty breathing, and it was so cold during the winter that ice formed inside the cell windows. Drawing all reasonable inferences in Walker's favor, these allegations plausibly alleged that the conditions persisted for twenty-eight months and that the temperatures were extreme enough to state an Eighth Amendment claim.

Further, the district court erred by dismissing Walker's claims of overcrowding on the ground that "[t]he twenty-nine square feet that Plaintiff complains about having in his six-person cell is fundamentally the same complaint confronted by the Supreme Court in *Rhodes* [*v. Chapman*, 452 U.S. 337 (1981),] and by the Northern District [of New York] in *Chapdelaine* [*v. Keller*, No. 95-CV-1126, 1998 U.S. Dist. LEXIS 23017 (N.D.N.Y. Apr. 16, 1998)]." *Rhodes* and *Chapdelaine* are plainly distinguishable for three reasons. First, while the Supreme Court in *Rhodes* found that the thirty-one square feet afforded each inmate in that case did not violate the Eighth Amendment, *see Rhodes*, 452 U.S. at 347, it did not hold that that amount of living space was sufficient as a matter of law. Rather,

housing multiple inmates together in one cell "can amount to an Eighth Amendment violation if combined with other adverse conditions."  *Bolton v. Goord*, 992 F. Supp. 604, 626 (S.D.N.Y. 1998) (quoting *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996)).  Here, Walker plausibly alleged that the overcrowding and lack of living space in his cell were exacerbated by the ventilation, noise, sanitation, and safety issues, leading to deprivations of specific life necessities.

Second, in contrast to the six-man cell to which Walker was assigned, the inmates in *Rhodes* and *Chapdelaine* were housed in two-man and four-man cells, respectively. *See Rhodes*, 452 U.S. at 343 (plaintiffs were assigned to two-man cells of approximately 63 square feet in size); *Chapdelaine*, 1998 U.S. Dist. LEXIS 23017, at *10, *15 (plaintiff was assigned to four-man cell at FCI Ray Brook of less than 120 square feet in size).  While we do not hold that a six-man cell can never be constitutional, it is at least plausible that housing six men in one cell poses additional, greater risks to the inmates' health and safety.

Third, *Rhodes* and *Chapdelaine* were decided after development of the factual record.  *See Rhodes*, 452 U.S. at 340-41, 342-43 (noting that district court had made "extensive findings of fact about [the prison] on the basis of evidence presented at trial and the court's own observations during an inspection that it conducted without advance notice," which showed that the prison was "unquestionably a top-flight, first-class facility" (internal quotation marks omitted)); *Chapdelaine*, 1998 U.S. Dist. LEXIS 23017, at *3-4, *13-15 (treating defendants' motion to dismiss as one for summary judgment "[s]ince the parties . . . submitted affidavits and exhibits").  Here, in contrast, Walker has not had any opportunity to take discovery or develop the record.[9]  Whether or not the

---

[9]      Further, the principal cases cited by defendants on appeal were decided after development of the facts on motions for summary judgment or after trial.  *See, e.g.*, *Trammel v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (finding "no factual dispute regarding whether the temperature in [plaintiff's] cell posed a threat to his 'health or safety'" and affirming district court's award of summary judgment); *Gaston v. Coughlin*, 249 F.3d 156, 164-66 (2d Cir. 2001) (reversing district court's award of summary judgment); *LaReau v. MacDougall*, 473 F.2d 974, 976 (2d Cir. 1972) (district court made findings of fact and conclusions of law after trial); *Hubbard v. Taylor*, 538 F.3d 229, 238 (3d Cir. 2008) (affirming district court's award of summary judgment dismissing Eighth Amendment claim "based on the totality of the

-26-

factual record, when developed more fully, will ultimately show that the Eighth Amendment was violated, the facts asserted in Walker's complaint plausibly alleged unconstitutional conditions of confinement.

Accordingly, the district court erred by concluding as a matter of law that Walker failed to allege objectively serious conditions that denied him the minimal civilized measure of life's necessities.

## 2.   *Deliberate Indifference*

Liberally construed, Walker's complaint adequately alleged that defendants knew of and disregarded the excessive risks to his health and safety to which he was exposed at FCI Ray Brook.  Specifically, Walker alleged that "Defendants Schult, Perdue, Salamy, Sepanek, Porter, Carter, [and] Wagner" each "knew of the overcrowding" in his cell, Compl. ¶ 12, and that he "spoke[] with Defendant Schult four times about the unconstitutional 6-man cells,"

---

circumstances presented on this factual record"); *Chandler v. Crosby*, 379 F.3d 1278, 1283, 1297-98 (11th Cir. 2004) (affirming judgment following a bench trial); *Green v. Walker*, 398 F. App'x 166, 169 (7th Cir. 2010) (non-precedential order) (affirming district court's award of summary judgment).

*id.* ¶ 2.[10] He alleged that "[a]ll of the Defendants are fully aware that the noise in the unit is so loud and constant" and that "Defendants are aware of the inadequate ventilation [and that] during the winter the cell is cold and summer months extremely hot and quite difficult to breathe." *Id.* ¶¶ 13, 21. Walker also alleged that he informed Sepanek, Schult, Salamy, Porter, and Carter that his bed was too narrow. *Id.* ¶ 7. Finally, Walker alleged that Sepanek, whose job it was to issue cleaning supplies, failed to do so. *Id.* ¶ 18 n.5. Yet, despite these complaints and defendants' knowledge, the conditions in Walker's cell did not change.

Because Walker set forth sufficient allegations of defendants' deliberate indifference, the district court erred by dismissing his complaint. *See Gaston*, 249 F.3d at 166 (asserting that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of obvious inhumane conditions); *Phelps*, 308 F.3d at 186-87 (noting that a plaintiff's ability to

---

[10] As noted, Walker does not challenge the dismissal of his claims against Norwood and Lappin.

prove facts such as subjective intent is an issue for summary judgment).

In so holding, we reaffirm that each prisoner complaint alleging a constitutional violation must be carefully analyzed in light of the particular facts contained therein.  Here, the specific facts in Walker's complaint plausibly alleged a violation of the Eighth Amendment.  But each complaint is different, and courts have the power and duty to dismiss complaints that contain only conclusory, frivolous, or implausible allegations.

3.  *Qualified Immunity*

Although the district court's discussion of qualified immunity was limited in scope, defendants assert on appeal that they are entitled to qualified immunity on all of Walker's claims because any constitutional rights they may have violated were not "clearly established."

Although federal officials' claims of qualified immunity should be decided as early as possible in a case, *see Saucier*, 533 U.S. at 201, it would be premature to dismiss the case now on this basis.  Rather, as we have noted previously, qualified immunity is often best decided

-29-

on a motion for summary judgment when the details of the alleged deprivations are more fully developed. *See Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994) ("Although a defense of qualified immunity should ordinarily be decided at the earliest possible stage in litigation, and it is a defense that often can and should be decided on a motion for summary judgment, some limited and carefully tailored discovery may be needed before summary judgment will be appropriate." (internal citations and quotation marks omitted)); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("The better rule, we believe, is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible . . . .").

Because we hold that Walker's complaint plausibly alleged conditions of confinement that could constitute cruel and unusual punishment, and that defendants acted (or failed to act) with deliberate indifference, further facts are required to decide the question of qualified immunity. In light of the specific allegations here, it would be inappropriate to conclude as a matter of law at the

pleadings stage of the litigation that defendants did not violate Walker's clearly established constitutional rights.[11]

### CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed as to defendants Norwood and Lappin, and vacated as to defendants Schult, Perdue, Salamy, Sepanek, Porter, Carter, and Wagner. The case is remanded to the district court for further proceedings consistent with this opinion.

---

[11] Insofar as the district court concluded that defendants were entitled to qualified immunity as to Walker's allegation that his cell lacked ladders to access the top bunk, we conclude that, while the claim in and of itself does not rise to the level of a constitutional violation, it must be considered as part of the total circumstances of Walker's confinement.