11-980-cv
*Washington v. Gonyea*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of September, two thousand and thirteen.

PRESENT:

DEBRA ANN LIVINGSTON,
DENNY CHIN,
   *Circuit Judges*,
EDGARDO RAMOS,
   *District Judge.*\*   .
_____

ANTHONY WASHINGTON,

    *Plaintiff-Appellant*,

  -v.-          No. 11-980-cv

PAUL GONYEA, Deputy Superintendent of Monterey Correctional
Facility, Individually and in his Official Capacity, TAMMI CHABOTY,
Sergeant at Woodbourne Correctional Facility, Individually and in
her Official Capacity, KEITH GRANGER, Sergeant at Livingston
Correctional Facility, Individually and in his Official Capacity,

    *Defendants-Appellees*.
_____

_____

\* The Honorable Edgardo Ramos, of the United States District Court for the Southern District of New York, sitting by designation.

1

MICHAEL J. BALCH, New York, New York, *for Plaintiff-Appellant*.

BRIAN A. SUTHERLAND, Assistant Solicitor General of Counsel (BARBARA D. UNDERWOOD, Solicitor General, MICHAEL S. BELOHLAVEK, Senior Counsel, *on the brief*), *for* ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, New York, New York, *for Defendants-Appellees*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the District Court is **AFFIRMED IN PART** and **REVERSED IN PART,** and the case is **REMANDED**.

Plaintiff-Appellant Anthony Washington ("Washington") appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), entered January 31, 2011, granting Defendants-Appellees' motions to dismiss. In an accompanying opinion filed today, we affirm on alternative grounds the district court's dismissal of Washington's claim that Defendants-Appellees substantially burdened his right to free exercise of religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1. In this summary order, we affirm the district court's denial of Washington's due process claim and reverse dismissal of his First Amendment retaliation claims.[1] We assume the parties' familiarity with the underlying facts and procedural history of the case.

We review the grant of a motion to dismiss *de novo*, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Since Washington filed his

---

[1] Washington did not challenge the district court's dismissal of his conspiracy claim on appeal, and we therefore deem that claim abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92-93 (2d Cir. 1995).

complaint *pro se*, "it must be construed liberally to raise the strongest arguments it suggests," *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks and alterations omitted), although "a *pro se* complaint must state a plausible claim for relief," *id.*

**I.    Due Process Claim**

"Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). When a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). In addition, "due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.'" *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Hill*, 472 U.S. at 457); *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (explaining that this Court "look[s] to see whether there was 'reliable evidence' of the inmate's guilt" supporting the disciplinary decision).

Washington fails to raise a due process claim upon which relief may be granted because his complaint does not plausibly allege that Defendant-Appellee Paul Gonyea's ("Gonyea") disciplinary decision that Washington had "communicat[ed] messages of a personal nature to an employee," thereby violating Rule 107.11,  7 N.Y.C.R.R. § 270.2(B)(8)(ii), lacked the support of at least some

3

reliable evidence.[2] Washington's complaint alleges that during the disciplinary hearing Gonyea heard testimony from Defendant-Appellee Tammi Chaboty ("Chaboty"), corroborated by testimony from Defendant-Appellee Keith Granger ("Granger"), that Chaboty "was concerned" when Washington handed her the Quran, that he had an "eerie smile which was unnerving," and that his "conduct [on] the night of the incident seemed inappropriate." The transcript of the proceeding also indicates that Gonyea interviewed the accuser, Chaboty, and in issuing his decision, relied upon Chaboty's written incident report and her testimony.[3] Although New York's Third Department found that the disciplinary decision was not based on *substantial* evidence, *Washington v. Selsky*, 48 A.D.3d 864, 865 (3d Dep't 2008) (annulling Washington's disciplinary disposition), Chaboty's testimony and corroborating evidence constituted *some* evidence in support of the decision. Since the decision did not rest on "blatantly implausible" evidence, *Zavaro*, 970 F.2d at 1152, or on hearsay accusations not independently assessed to be credible, *see Pico*, 356 F.3d at 489-90, Washington's due process claim must fail.

---

[2] Rule 107.11 is part of Rule Series 107, which addresses an inmate's "Interference with an Employee or Other Person." 7 N.Y.C.R.R. § 270.2(B)(8). Rule 107.11 provides in full,

> An inmate shall not harass an employee or any other person verbally or in writing. Prohibited conduct includes, but is not limited to, using insolent, abusive, or obscene language or gestures, or writing or otherwise communicating messages of a personal nature to an employee or any other person including a person subject of an order of protection with the inmate or who is on the inmate's negative correspondence list.

*Id.* § 270.2(B)(8)(ii).

[3] In considering a motion to dismiss, a court may consider both documents incorporated by reference into the complaint and unincorporated documents that are integral to the complaint and upon which the complaint heavily relies. *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Here, incorporation of the transcript is proper because the complaint relies heavily on the hearing transcript.

4

**II.    First Amendment Retaliation Claims**

Washington alleges that the Defendants-Appellees violated his First Amendment rights to free exercise of his religion and free speech when they retaliated against him for disseminating religious material to Chaboty.  To prevail on a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983, a prisoner must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that "the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).  In determining whether a prisoner's conduct is motivated by a sincerely held religious belief, we do not "evaluate the objective reasonableness of the prisoner's belief;" *Ford v. McGinnis*, 352 F.3d 582, 590 (2d Cir. 2003); rather, our "scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature," *id.* (internal quotation marks omitted).

The district court erred in dismissing Washington's retaliation claims on the basis that he failed to plead that his act of giving the Quran to Chaboty constituted an exercise of his sincerely held religious beliefs. Washington alleged that he wanted to give Chaboty the Quran "in response to her expressed interest to know about the religion of Islam" and, significantly, that "he felt that he would be remissed [*sic*] not to give her the book as it is the primary source of Islam."  In his affidavit opposing dismissal, Washington stated that he believes it to be his "religious duty to inform

5

others about the religion of Islam, especially those who inquire about it."[4]  Therefore, read liberally and as a whole, the complaint alleges that Washington felt a sincere religious obligation to give the Quran to Chaboty, and while the contours of the burden standard are not precisely drawn, *see Salahuddin*, 467 F.3d at 275 n.5, the conduct alleged here—that Washington was severely punished for engaging in protected activity—rises to the level of a substantial burden on the free exercise of religion.

Even if Defendants-Appellees substantially burdened Washington's sincerely held religious beliefs, their actions do not constitute a constitutional deprivation if they were "reasonably related to legitimate penological interests." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (articulating three-step analysis for determining reasonableness of a prison regulation).  As the district court correctly recognized, assessing the reasonableness of penological interests is a factual and context-specific inquiry that in this case is inappropriate at this preliminary stage of the proceedings.  *See Ford*, 352 F.3d at 596; *Salahuddin*, 467 F.3d at 277.  Furthermore, Washington alleges that Defendants-Appellees were motivated by personal prejudice and did not act against him for legitimate penological reasons.  *See Shakur v. Selsky*, 391 F.3d 106, 116 (2d Cir. 2004) (reversing dismissal of prisoner's retaliation claim and noting that "a failure to abide by established procedures or standards can evince an improper objective").  Therefore, accepting the complaint's well-pled factual allegations as true, we conclude that Washington has plausibly alleged that the officers' actions were not reasonably related to legitimate penological interests.

---

[4] Courts "deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

6

Additionally, we note that Washington alleges that he was denied religious services while in Special Housing Unit ("S.H.U.") pursuant to the discipline imposed by Gonyea. Although assigned pro bono counsel did not argue on appeal that this alleged deprivation constituted a violation of Washington's free exercise rights, our waiver doctrine is prudential, *see In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam), and we address that claim here. While the complaint does not specify which official denied him religious services in S.H.U., a liberal reading of the complaint gives rise to a plausible inference that Chaboty and Granger were involved either directly or indirectly, and Washington has therefore adequately pled a violation of his First Amendment rights on that basis. On remand, the district court should allow Washington leave to amend his pleadings to add additional defendants if requested.

**III.  Qualified Immunity**

Finally, Defendants-Appellees argue that they are entitled to qualified immunity because their conduct, as alleged, did not violate clearly established statutory or constitutional rights. However, "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001). Here, Washington has plausibly alleged that Defendants-Appellees acted with an improper retaliatory motive. *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("In order to prevail on his retaliation claims, [plaintiff] bears the burden of showing . . . that the [constitutionally protected] conduct was a substantial or motivating factor for the adverse actions taken by prison officials."); Compl. ¶¶ 18, 20, 22, 24, 39. Therefore, at this stage of the proceedings, Washington's allegations are sufficient to require deferral of the issue of  qualified immunity.

We have considered the parties' remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART,** and the case is **REMANDED** for further proceedings consistent with this order**.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk