# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2482
_____

Patrick A. Dadd

*Plaintiff - Appellee*

v.

Anoka County; Deputy Nichole Kempenich; Deputies J. Does, 1-4, the identities
of whom are presently unknown to the *plaintiff*; Nurse J. Doe, the identity of
whom is presently unknown to the *plaintiff*, all in their individual and official capacities

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: February 10, 2016
Filed: June 30, 2016
_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Patrick A. Dadd sued Anoka County, several detention deputies, and a nurse (collectively Anoka)[1] under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of his right to substantive due process under the Fourteenth Amendment while he was in custody at the Anoka County Jail.[2] Anoka appeals the district court's[3] denial of its Rule 12(b)(6) motion to dismiss Dadd's complaint on the basis of qualified immunity. Because we agree that the defendants were not entitled to qualified immunity, we affirm.

## I. Background

On March 28, 2014, Dadd underwent a dental surgery that involved cutting into his jaw bone and extracting a tooth. His oral surgeon prescribed Vicodin, a pain-killer, to take on an as-needed basis during recovery. Dadd filled his prescription the day of his surgery, and began taking the pills as prescribed.

Dadd was arrested the next evening, March 29, 2014, at his home. Dadd advised the arresting officers that he was recovering from dental surgery and was on Vicodin, and the arresting officers agreed to bring Dadd's Vicodin with him to the jail. While Dadd had taken his Vicodin earlier in the day, he told the officers he had not taken it on the evening of his arrest. The arresting officers transported Dadd to the Anoka County Jail and transferred him into the custody of the Anoka County

---

[1]We refer to all Appellants collectively as "Anoka" for the sake of simplicity, recognizing that we are sometimes referring to multiple or individual defendants.

[2]Dadd also alleged state law claims of medical malpractice and negligence, but those claims are not at issue on appeal.

[3]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, adopting the report and recommendation of The Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

-2-

Sheriff's Office and Defendant Deputy Nichole Kempenich. Deputy Kempenich took Dadd's Vicodin prescription from the arresting officers and booked Dadd into the jail.

During the booking process, Dadd told Deputy Kempenich about his dental surgery the day before, that he was in severe pain as a result, and that he needed to take the prescribed medication she had been given by the arresting officers. Dadd alleged that Deputy Kempenich did not address his claims of pain or make any arrangements for him to take his medication or see a nurse. Also during the booking process, Deputy Kempenich filled out a medical questionnaire in which she wrote that Dadd did not have any dental problems, and she wrote "N/A" in response to whether he needed to be referred to a registered nurse.

Dadd also complained to three other deputies he noticed standing nearby during the booking process, telling them of his severe dental pain and his need to take his medication. Those deputies also ignored his concerns.

After completing the booking process, Dadd was taken to a cell for the night. Throughout the night, he suffered "severe and excruciating" pain and was unable to sleep. Because of the pain, Dadd rolled toilet paper into balls, soaked them in cold water, and applied them to the wound inside his mouth.

The next morning, March 30, 2014, Dadd was allowed to visit with a nurse at the jail. During the appointment, Dadd told the nurse he had undergone dental surgery on March 28 shortly before his arrest, was in severe pain, and was prescribed Vicodin to alleviate the pain. He also told her the prescription had been brought to the jail by the arresting officers. The nurse refused Dadd's request to take his medication or to take any type of prescription or over-the-counter pain medicine to help with his pain. Dadd informed the nurse that he could not sleep the night before because of the pain and that he had spent most of the night using toilet paper soaked in cold water to try to alleviate his pain. The nurse continued to refuse Dadd's

-3-

request for help and the appointment ended without Dadd taking or receiving any medication.

Dadd alleges that due to the severe pain and lack of any medication, he could not chew anything for the remainder of the day and therefore did not eat. He continued to use rolled-up toilet paper soaked in cold water to deal with the pain. At one point, when another deputy noticed that Dadd was not eating, Dadd complained about his pain and inability to chew or eat because of it. Dadd explained his dental surgery, and told the deputy that he was in severe pain, that he was prescribed pain medicine, and that the medicine had been delivered to the jail. He asked the deputy to help him. The deputy did not respond.

At noon on March 30, 2014, the jail doctor directed the nurse to give Dadd Ibuprofen, a pain reliever, three times per day. The nurse did not respond to this directive and did not provide Dadd with Ibuprofen. Dadd did not receive any medication or treatment for his pain on March 30, 2014, and stated that "he spent most of the day crying and in complete agony." He was once again unable to sleep the night of March 30, 2014, and again spent the night with wet toilet paper in his mouth.

The next morning, on March 31, 2014, Dadd was still unable to eat or chew. No one offered him help or treatment for his pain. After breakfast, Dadd was taken to court and later brought back to jail, where he spent the day in severe pain with no treatment or medication. He was released from the jail at approximately 5:30 pm that evening. Jail staff returned Dadd's Vicodin to him as he exited the jail. On his way out, Dadd complained to jail staff about the suffering he had undergone, and one of the deputies "responded that jail was not supposed to be 'comfortable.'"

In his complaint, Dadd asserted three claims for relief, only one of which is at issue on appeal: Count 1 alleged that Deputy Kempenich, Deputies J. Does 1–4, and

Nurse J. Doe 5 violated his Fourteenth Amendment right to substantive due process through their deliberate indifference towards his serious medical needs.[4] Anoka moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count 1 for failure to state a claim upon which relief could be granted, arguing that the defendants are entitled to qualified immunity.

## II. Discussion

Anoka asserts that the district court erred in denying its motion to dismiss Dadd's § 1983 claim on the ground of qualified immunity. "A denial of qualified immunity is an appealable 'final decision' only 'to the extent it turns on an issue of law.'" Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1012 (8th Cir. 2013) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." Id. at 1013 (citing Gross v. Weber, 186 F.3d 1089, 1090 (8th Cir. 1999)). At this early stage of the litigation, to warrant reversal, "defendants must show that they are entitled to qualified immunity on the face of the complaint." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (citing Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)). "[We] review de novo the denial of a motion to dismiss on the basis of qualified immunity," and must consider "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." Hager, 735 F.3d at 1013.

---

[4]Count 2 alleged medical malpractice against Nurse J. Doe 5 and Anoka County, and Count 3 alleged that Deputy Kempenich, Deputies J. Does 1–4, Nurse J. Doe 5, and Anoka County acted negligently in failing to properly document his dental problems and severe pain during booking and in failing to respond to his requests for pain treatment and medical attention.

Anoka alleges that Dadd failed to establish a plausible claim for a violation of a constitutional right, i.e., deliberate indifference to his serious medical needs. To state a claim for deliberate indifference, Dadd must show that he was suffering from an objectively serious medical need, and that prison officials knew of the need but deliberately disregarded it. See Saylor v. Nebraska, 812 F.3d 637, 643–44 (8th Cir. 2016). A serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Vaughn v. Greene Cty., Ark., 438 F.3d 845, 851 (8th Cir. 2006) (quoting Pool v. Sebastian Cty., Ark., 418 F.3d 934, 944 (8th Cir. 2005)). Anoka concedes that Dadd was suffering from a serious medical need. In dispute, however, is whether the Anoka defendants were deliberately indifferent to it.

As an initial matter, we agree that Deputy Kempenich, Deputies J. Does 1–4, and Nurse J. Doe 5 were aware of Dadd's serious medical needs. According to the complaint, Dadd explained his condition, severe pain, and need for medication to Deputy Kempenich at booking, to each deputy he described interaction with, and to the jail nurse. When she eventually spoke to a doctor, the nurse acknowledged Dadd's pain. After the doctor prescribed pain medication, however, the nurse failed to administer it to Dadd. Anoka argues that the nurse had only "constructive knowledge" of Dadd's need for the medicine, since he did not return to her after the medicine was prescribed. But Dadd had seen the nurse only hours before. Just as we may infer that an official knows of a substantial risk to a plaintiff's health when the risk is obvious, it reasonably may be inferred the nurse was aware Dadd was still in pain. See Coleman v. Rahija, 114 F.3d 778, 786 (8th Cir. 1997) ("The factual determination that a prison official had the requisite knowledge of a substantial risk may be inferred from circumstantial evidence or from the very fact that the risk was obvious." (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994))).

Nevertheless, Anoka asserts the defendants are entitled to qualified immunity because Dadd has failed to show they acted with deliberate indifference. Dadd alleged that Deputy Kempenich, Deputies J. Does 1–4, and Nurse J. Doe 5 deliberately disregarded his serious medical needs when they ignored his requests for help or treatment after he informed them of his pain. The deputies failed to distribute Dadd's Vicodin prescription despite their awareness of the medication and Dadd's pain. When Dadd eventually saw a nurse he was given no medication. While the nurse consulted a doctor after the appointment and that doctor subsequently prescribed Dadd medication, he never received it. "Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989). Anoka's argument that the minimal medical attention Dadd received was adequate to support a motion to dismiss on qualified immunity grounds is unavailing. See Boretti v. Wiscomb, 930 F.2d 1150, 1154–55 (6th Cir. 1991) (holding that a nurse's failure to dispense prescribed pain medicine was sufficient to state an Eighth Amendment claim, even where wound healed normally). Moreover, Anoka's argument that several of the deputies are not liable because they had minimal contact with Dadd is also unpersuasive. See Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981) (holding that one instance of contact with the plaintiff after the injury was enough to establish liability).[5]

Anoka also attempts to undermine Dadd's claim on timing grounds, asserting that because the defendants did not delay Dadd's medical treatment for days, weeks, or months, Dadd has failed to state a claim. Yet Anoka does not cite to any precedent that requires a certain amount of delay before a plaintiff has a viable constitutional claim, and no bright line exists. In fact, two days' delay of pain treatment may be the

---

[5]We note that the district court did not analyze the actions of each individual defendant separately, and it may be proper to dismiss one or more defendants as the litigation progresses. We express no view on any such motion.

basis of a constitutional claim. See id. (holding that defendants were liable for a two-day delay in receiving treatment that resulted in greater pain); see also Edwards v. Snyder, 478 F.3d 827, 830–32 (7th Cir. 2007). Of course, not every delay rises to the level of a constitutional violation. But the cases on which Anoka relies to support dismissal on this ground are distinguishable from Dadd's: In those cases, "a medical judgment" or a plaintiff's uncooperative behavior – rather than indifference – caused the delay. See Jenkins v. Cty. of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009); Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997). Dadd's medical need was clear and he had already been prescribed medicine that was deliberately withheld from him. Accepting Dadd's factual allegations as true, the deputies' decisions to ignore Dadd's complaints were not based on "a medical judgment," but rather indifference. Dadd has plausibly stated a claim for a violation of his right to adequate medical care on the basis of deliberate indifference.

Anoka also rests its claim for qualified immunity on the argument that Dadd's right to treatment in this particular situation was not clearly established, the second prong of the qualified immunity analysis. A clearly established right is one that is "sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Even if a complaint fairly alleges a violation of a constitutional right, an official is nevertheless entitled to qualified immunity if that right was not clearly established at the time of the violation.

It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody. See West v. Atkins, 487 U.S. 42, 55 (1988). The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); see also Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010)

("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." (quotations omitted)). It is not necessary to have a prior case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citation omitted); see also Johnson v. Carroll, 658 F.3d 819, 828 (8th Cir. 2011) ("Although earlier cases need not involve fundamentally or materially similar facts, the earlier cases must give officials fair warning that their alleged treatment of the plaintiff was unconstitutional.")

When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. See Foulks v. Cole Cty., Mo., 991 F.2d 454, 455–57 (8th Cir. 1993) (holding there was liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain, and refused to provide medication they were aware was prescribed); Majors v. Baldwin, 456 F. App'x 616, 617 (8th Cir. 2012) (unpublished per curiam) (holding that plaintiff had established a deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment); Phillips v. Jasper Cty. Jail, 437 F.3d 791, 795–96 (8th Cir. 2006) ("[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference."); Johnson v. Hay, 931 F.2d 456, 462 (8th Cir. 1991); Ellis v. Butler, 890 F.2d 1001, 1004 (8th Cir. 1989); Crooks v. Nix, 872 F.2d 800, 805 (8th Cir. 1989); Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980). Dadd arrived at the jail with instructions from his doctor in the form of a Vicodin prescription, and the deputies and the jail nurse ignored his complaints of pain and requests for treatment. When Dadd was prescribed additional medication by a jail doctor, he did not receive it.

Moreover, the defendants had fair warning about the unconstitutionality of a failure to provide pain medication for serious dental conditions in particular. See

Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004) (reversing grant of summary judgment in favor of defendants on deliberate indifference claim where plaintiff suffered extreme dental pain, swelling, and difficulty sleeping and eating); Moore v. Jackson, 123 F.3d 1082, 1085–89 (8th Cir. 1997) (holding that a deliberate indifference claim survived summary judgment where defendants ignored intense and severe dental pain); Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984) (reversing grant of summary judgment for defendants where plaintiff experienced severe dental pain).[6] Dadd's right to adequate treatment was clearly established, and the district court properly denied the defendants qualified immunity.

Dadd also asks us to sanction the defendants for bringing a frivolous appeal. An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." Horton v. Conklin, 431 F.3d 602, 606 (8th Cir. 2005) (quoting Newhouse v. McCormick & Co., 130 F.3d 302, 305 (8th Cir. 1997)). If an appeal is frivolous, we "may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Newhouse, 130 F.3d at 304; Fed. R. App. P. 38. "[S]anctions are appropriate where an appeal challenges district court decisions that are unquestionably supported by the great weight of the evidence and wholly in conformance with applicable law." Horton, 431 F.3d at 606 (quoting First Commercial Trust Co. v. Colts Mfg. Co., 77 F.3d 1081, 1084 (8th Cir. 1996)).

While the cases cited by Anoka did not require a reversal in this case, Anoka's attempt to distinguish Dadd's claim based on timing brings its appeal above the level of frivolity. We rely on precedent in determining that Dadd stated a claim for relief,

---

[6]To the extent Anoka attempts to argue that Dadd's rights were not clearly established on the basis of timing, we reject that distinction once again. Delays of only two days may support a claim, and Anoka provides no persuasive authority that the right to adequate medical treatment begins only after a certain period of time.

yet we conclude that the defendants made a more-than-frivolous, if ultimately unpersuasive, argument that they would not have known Dadd's rights were clearly violated during his short time in jail. We therefore decline to impose sanctions under Fed. R. App. P. 38. See id.

### III. Conclusion

We affirm the judgment of the district court.

_____