# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3052

_____

Cissy Thunderhawk, on behalf of herself and all similarly situated persons; Wašté Win Young, on behalf of herself and all similarly situated persons; Reverend John Floberg, on behalf of himself and all similarly situated persons; José Zhagñay, on behalf of himself and all similarly situated persons

*Plaintiffs - Appellees*

v.

Morton County; Sheriff Kyle Kirchmeier

*Defendant*s

Governor Doug Burgum; Former Governor Jack Dalrymple; Director Grant Levi; Superintendent Michael Gerhart, Jr.

*Defendants - Appellants*

Does 1-100; Tigerswan, LLC

*Defendant*s

------------------------------

American Civil Liberties Union; American Civil Liberties Union of North Dakota

*Amici on Behalf of Appellee(s)*

_____

No. 20-3053

_____

Cissy Thunderhawk, on behalf of herself and all similarly situated persons; Wašté Win Young, on behalf of herself and all similarly situated persons; Reverend John Floberg, on behalf of himself and all similarly situated persons; José Zhagñay, on behalf of himself and all similarly situated persons

*Plaintiffs - Appellees*

v.

Sheriff Kyle Kirchmeier

*Defendant - Appellant*

Governor Doug Burgum; Former Governor Jack Dalrymple; Director Grant Levi; Superintendent Michael Gerhart, Jr.; Tigerswan, LLC; Does 1-100; Morton County

*Defendant*s

------------------------------

American Civil Liberties Union; American Civil Liberties Union of North Dakota

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: February 15, 2022
Filed: July 5, 2022
[Unpublished]
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

-2-

This putative class action arises from the highly publicized protests against construction of the Dakota Access Pipeline (DAPL) across an area of North Dakota near the boundary of the Standing Rock Indian Reservation. Between April 2016 and February 2017, members of the Standing Rock Sioux Tribe, along with tens of thousands of self-identified "Water Protectors," engaged in protests near where State Highway 1806 crosses the Cannonball River. Following a significant skirmish between protestors and law enforcement officials, law enforcement erected a barricade across the Backwater Bridge, blocking through access on State Highway 1806. Plaintiffs, a group of tribal members and supporters, filed suit against various state and county officials, alleging that the closure of Backwater Bridge and a nine-mile section of road violated their constitutional rights. Defendants filed a motion to dismiss, which the district court granted in part and denied in part. As relevant to this appeal, the district court denied the motion as it relates to defendants' entitlement to qualified immunity, concluding that the qualified immunity analysis would be more properly decided at the summary judgment stage. Defendants filed this interlocutory appeal, asserting that the district court erroneously denied the motion to dismiss based on qualified immunity.

This Court "'review[s] de novo the denial of a motion to dismiss on the basis of qualified immunity,' and must consider 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'" Dadd v. Anoka Cnty., 827 F.3d 749, 754-55 (8th Cir. 2016) (citation omitted). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Watson v. Boyd, 2 F.4th 1106, 1110 (8th Cir. 2021) (citation omitted). Accordingly, it "'is effectively lost if a case is erroneously permitted to go to trial,' [and] law enforcement officers are at least 'entitled to a thorough determination of their claim of qualified immunity if that immunity is to mean anything at all.'" Id. (citations omitted). "Indeed, [the Supreme Court] ha[s] made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to

discovery.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (third alteration in original) (citation omitted).

In its 101-page opinion and order, the district court devoted less than 3 pages to the qualified immunity analysis. As to the first prong, the district court determined that "the Plaintiffs have alleged facts showing violations of their constitutional right to speech," and, as to the second prong, the district court stated that "whether the law was clearly established so that a reasonable official would know he or she was violating the constitutional rights of another . . . appears to be the biggest contention between the parties." R. Doc. 88, at 98. Instead of deciding the clearly established prong, however, the district court stated that

> this case is an example of why "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." Walker v. Schult, 717 F.3d 119, 1130 (2d Cir. 2013)[.] As the United States Supreme Court has noted, "when qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" and "the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." Pearson v. Callahan, 555 U.S. 223, 238-39 (2009).

R. Doc. 88, at 100 (second alteration in original). "While a district court may address the prongs in any order, it 'may not deny qualified immunity without answering both questions in the plaintiff's favor.'" Watson, 2 F.4th at 1112 (citation omitted). The district court's failure to answer the clearly established inquiry was thus erroneous. Defendants urge us to conduct the clearly established inquiry in the first instance as it involves a purely legal question. We decline to do so without the benefit of the district court's analysis. See Burris v. Cobb, 808 F.3d 386, 388 (8th Cir. 2015) ("The district court . . . did not address any of [defendants' alternative] contentions, and we believe that the alternative arguments for dismissal, and the responses thereto, are best considered by the district court in the first instance."). We therefore remand to the district court with instructions to conduct the requisite clearly established analysis.

-4-

For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

_____