# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1198

———————————————

Tracy Todd Presson

*Plaintiff - Appellee*

v.

Darrin Reed, Sheriff; Jeff Lane

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the Western District of Missouri - Springfield

——————————

Submitted: October 20, 2022
Filed: April 12, 2023

——————————

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

——————————

SMITH, Chief Judge.

Tracy Todd Presson, a former pretrial detainee in the custody of the Ozark County Sheriff's Department, filed an action pursuant to 42 U.S.C. § 1983 claiming that Darrin Reed and Jeff Lane acted with deliberate indifference to Presson's serious medical needs by denying him prescription medication. Reed and Lane moved for

summary judgment on the basis of qualified immunity. The district court[1] denied the motion. They appeal the district court's denial of qualified immunity. We affirm.

## I. *Background*

"We recite the facts in the light most favorable to [Presson], as the nonmoving part[y]." *K.W.P. v. Kan. City Pub. Sch.*, 931 F.3d 813, 816 (8th Cir. 2019) (second alteration in original) (quoting *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 808 (8th Cir. 2008)).[2]

The Ozark County Sheriff's Department arrested Presson on October 2, 2018. Following his arrest, he was confined at the Ozark County Jail and remained there until November 19, 2018.

Prior to and during Presson's detention, Darrin Reed was the Ozark County Sheriff, and Deputy Jeff Lane worked at the jail.

At the time of his arrest, Presson was prescribed the following medications to treat various diagnosed conditions: (1) cyclobenzaprine (muscle relaxant for a back injury); (2) Adderall (for attention deficit disorder); (3) omeprazole (for

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

[2]In construing the facts in the light most favorable to Presson, we include those facts set forth in Presson's verified complaint and verified amended complaint. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001) ("A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint. Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." (citations omitted)).

gastroesophageal reflux disease); and (4) Ambien (for insomnia). Prior to his arrest, on September 10, 2018, Presson had filled his 30-day prescription for Adderall. Presson was instructed to "take one capsule by mouth every 24 hours as needed." J.A. at 281 (all caps omitted). Presson had filled a ten-day prescription for cyclobenzaprine on September 27, 2018. He was instructed to "take one tablet by mouth every 8 hours." *Id.* at 273 (all caps omitted).

Presson's brother delivered each prescription to the jail. Presson informed Reed that Presson "needed his long-term prescription medications[,] including Adderall, [o]meprazole, Ambien, and 'muscle relax[ants] for a back injury.'" *Presson v. Reed*, No. 6:19-cv-03192-RK, 2022 WL 107105, at *2 (W.D. Mo. Jan. 11, 2022).

The jail's medical administration record for Presson ("medical log") reflects that Presson was to receive "[o]meprazole" and "Ambien," both with a frequency of "1." J.A. at 142 (all caps omitted). It does not list Adderall or cyclobenzaprine. It shows that "MEDS" were administered to Presson sometimes once, twice, or three times a day at varying times from October 4, 2018, to November 18, 2018, except for November 8, 2018, when no medication is recorded as having been administered.[3] J.A. at 143–44. This record, however, does not specify *what* medications were administered to Presson on these dates and times. *See id*.

---

[3] Additionally, "the medical log does not include a record of medication being given in the morning on several days: October 15 through October 19, 2018; October 22 through October 26, 2018; October 29, 2018; November 2, 2018; November 6, 2018; November 9, 2018; and November 12 through November 14, 2018." *Presson*, 2022 WL 107105, at *8. And Presson did not receive medication on November 15 and 16, 2018, when Presson was receiving medical treatment at the Ozark Medical Center after his suicide attempt.

According to the medical log, various jail personnel, including Lane, administered medication to Presson.[4] According to Presson, he "begged [Deputy] Jeff Lane multiple times a day to get [his] medication but [Lane] refused." *Presson*, 2022 WL 107105, at *7. And while Reed did not administer any medications to Presson, Lane told Presson that Reed's approval was required to give Presson his prescription medications. *See id.* at *9 ("At that point I told Jailer Jeff Lane and he stated he could not give medication without Sheriff Darrin Reed[']s approval." (alteration in original) (quoting R. Doc. 13, at 6)). Additionally, according to Presson, "while he was detained and asking for his prescription medications, . . . Reed told him, '[y]ou will get them tomorrow but tomorrow never comes.'" *Id.* at *11 (second alteration in original).

During his detention at the jail, Presson, for reasons unclear in the record, did not receive his prescribed cyclobenzaprine. Presson also did not receive his prescribed Adderall. "[B]ecause [Adderall] is a controlled substance, it is not administered to any detainee at the jail pursuant to policy." *Id.* at 2 (second alteration in original). The jail manual, however, does not include this "controlled substance policy." Instead, "the jail's manual includes the following policy regarding administration of detainees' prescription medication: 'Medications: Jail staff will administer legally prescribed medications according to the prescribing physicians. Jail staff will not deviate from the physician's instructions.'" *Id.* at 3.

Presson "'repeatedly' told [the] [d]efendants his Ambien prescription was for one tablet per day at bedtime, as needed, and not for more than 7–10 days at a time."

---

[4]"Lane's badge number is '937.'" *Presson*, 2022 WL 107105, at *8 (quoting R. Doc. 118, at 14, ¶ 11). The medical log lists this badge number "on nine occasions: '10/04/2018 [at] 08:30:05'; '10/05/2018 [at] 08:41:39'; '10/10/2018 [at] 08:12:25'; '10/11/2018 [at] 08:17:58'; '10/12/2018 [at] 08:30:47'; '10/30/2018 [at] 08:16:14'; '10/31/2018 [at] 08:17:10'; '11/01/2018 [at] 08:44:50'; and '11/05/2018 [at] 08:17:15.'" *Id.* (alterations in original) (quoting R. Doc. 111-3, at 5–6).

*Id.* at 2. Contrary to Presson's instructions, the "[d]efendants gave him Ambien 'multiple times a day' including at times other than bedtime, and for more than 7–10 days." *Id.*

"[A]s a result of not receiving his prescription medications as prescribed for several weeks, [Presson] suffered 'severe pain, depression, and throwing up bile,' and ultimately attempted suicide." *Id.* On October 17, 2018, Presson told Lane that he was having chest pain. Presson alleges that, over time, his pain and vomiting had become so severe that he thought he was having a heart attack. Lane moved Presson to a holding cell. Later, Presson was taken for medical treatment to a local medical clinic. The clinic's medical records show that Presson reported "'shortness of breath,' 'chest pain,' 'throwing up acid,' and that his 'right lung feels on fire.'" *Id.* at 2–3. Presson informed the doctors that he had not had his omeprazole medication for 17 days. "The doctor recommended [that Presson] '[r]estart[] [o]meprazole.'" *Id.* at 3 (second and third alterations in original).

"Then, beginning on November 8, 2018, journal entries . . . reflect [Presson] contemplating suicide by taking '30 sleeping pills' he had. On November 15, 2018, [Presson] ingested 20–30 prescription Ambien pills he had collected and was taken to the Ozark Medical Center Emergency Room." *Id.* Medical records reflect that Presson informed the emergency room staff that he

> took about 20–30 pills. He states that he collected this [sic] pills over the loss [sic] several weeks in order to have enough to kill himself. It happened several hours prior to the ED visit. He reports that he tried to kill himself. He also reports that he tried to hurt himself by hitting his head to the wall.

R. Doc. 61, at 5 (alterations in original) (quoting R. Doc. 50-13, at 7). While in the emergency room, Presson attempted "to hurt himself again by throwing himself from

the bed. He fell on the ground. He was taken to . . . radiology again and a new CT of the brain was done which was negative." *Id.* (quoting R. Doc. 50-13, at 7).

Presson's doctors discontinued his Ambien prescription due to the overdose. They recommended that Presson take a different medication for depression and insomnia and seek outpatient mental health treatment. They "further recommended that '[Presson] be maintained on suicide precautions while incarcerated and that mouth checks be done after medication administration to ensure compliance rather than cheeking[5] medication.'" *Id.* (quoting R. Doc. 50-13, at 14). Presson remained at the hospital overnight.

Presson returned to the jail on November 16, 2018, at 10:30 p.m. Three days later, he was transferred to another county jail.

Presson then brought this prisoner pro se action pursuant to 42 U.S.C. § 1983, alleging that Reed and Lane violated his Eighth Amendment rights and were deliberately indifferent to his serious medical needs by withholding and misadministering his various prescription medications. In his amended verified complaint, Presson alleged that the defendants misadministered his Ambien and omeprazole prescriptions and withheld his Adderall and cyclobenzaprine medications, despite his repeated requests. He further alleged that the misadministration and withholding of his medications resulted in him (1) suffering severe pain and throwing up bile to the degree that he required emergency medical treatment for a possible cardiac event, and (2) attempting suicide.

The defendants moved for summary judgment on the basis of qualified immunity. The district court analyzed Presson's deliberate-indifference claim under

---

[5]"Based on the record 'cheeking' appears to occur when someone secrets a pill in his/her cheek to save the pill." *Id.* at 5 n.7 (citing R. Doc. 50-13, at 16.)

the Fourteenth Amendment instead of the Eighth Amendment because Presson was a pretrial detainee at the time of the events. The district court denied the defendants' motion.

First, the district court rejected the defendants' argument that Presson could not establish a violation of his constitutional rights. The court concluded that genuine material issues of fact existed as to whether Presson had an objectively serious medical need and whether the defendants were subjectively aware of the need but disregarded it taking into account the facility's policy and the schedule used to dispense medication.

Second, the district court concluded that "when viewed in the light most favorable to [Presson], . . . a fact-finder could conclude [the] [d]efendants were deliberately indifferent to [Presson's] serious medical need in their misadministration and withholding of [Presson's] various prescription medications." *Presson*, 2022 WL 107105, at *10. According to the court, "the [d]efendants had fair warning about the unconstitutionality of failing to provide prescription medication for a serious medical need." *Id.*

The court also rejected the defendants' argument that they were entitled to summary judgment on Presson's claim for punitive damages because he "'was treated appropriately' and 'was not denied medical care.'" *Id.* at *11. "At this juncture," the court stated, "this argument is plainly unpersuasive given the various issues of fact that exist on this summary judgment record." *Id.*

## II. *Discussion*

The defendants argue that the district court erroneously denied their motion for summary judgment on Presson's deliberate-indifference claim based on qualified immunity. According to the defendants, "[t]he material facts establish there was no deliberate indifference to a serious medical need as a matter of law" for the following

reasons: (1) they provided Presson with "medical care and transferred [him] to the hospital twice, once for complaints of chest pain and again, after he hoarded his prescription sleep medication and tried to commit suicide by overdose"; and (2) Presson failed to produce an "expert medical opinion that any actions of [the defendants] caused an adverse effect on his health or prognosis." Appellants' Br. at 13. "[A]side from [Presson's] failure to establish a constitutional violation," the defendants also argue that they are entitled to qualified immunity because "their individual actions were objectively reasonable under the circumstances." *Id.* at 14.

## A. *Jurisdiction*

As a threshold matter, Presson argues that even though "this [c]ourt has appellate jurisdiction to review on an interlocutory basis a district court's denial of summary judgment on qualified immunity grounds, such a review is limited to purely legal issues. In their instant appeal, Reed and Lane instead improperly argue the sufficiency of the evidence regarding their conduct." Appellee's Br. at 7. Presson maintains that "[s]uch factual inquiries are solidly within the realm of the [d]istrict [c]ourt and, regardless, cannot be the basis for interlocutory appeal. Because the material and predicate facts underlying this appeal are in dispute, this [c]ourt lacks jurisdiction." *Id.*

> This court has authority under the collateral order doctrine to hear an interlocutory appeal of a denial of qualified immunity. Jurisdiction over an interlocutory appeal from the denial of qualified immunity extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial. Appellate review in these circumstances is therefore limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights. When there are questions of fact the district court did not resolve, we determine the facts that it likely assumed by viewing the record favorably to the plaintiff as in any other summary judgment motion, unless the plaintiff's version of the facts is

blatantly contradicted by the record. In other words, we review whether the official is entitled to qualified immunity based on the summary judgment facts as described by the district court, along with those facts that the district court likely assumed. We do not have jurisdiction to review whether a factual dispute is genuine, but we do have jurisdiction to review the purely legal question whether a dispute identified by the district court is material.

The qualified immunity inquiry involves two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation. The defendant is entitled to qualified immunity unless the answer to both of these questions is yes. The court may consider them in either order. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent. We review a district court's qualified immunity determination on summary judgment de novo.

*McDaniel v. Neal*, 44 F.4th 1085, 1088–89 (8th Cir. 2022) (cleaned up).

Here, the district court denied qualified immunity because "when viewed in the light most favorable to [Presson], . . . a fact-finder could conclude [d]efendants were deliberately indifferent to [Presson's] serious medical need in their misadministration and withholding of [Presson's] various prescription medications." *Presson*, 2022 WL 107105, at *10. "At this stage, we[, too,] view the facts in the light most favorable to [Presson]." *McDaniel*, 44 F.4th at 1090. When doing so, we may answer the legal question of whether Presson's constitutional rights were violated and, if so, whether the law was clearly established at the time of the violation. *See id.* Therefore, we have jurisdiction to hear the instant appeal.

B. *Qualified Immunity*

1. *Constitutional Violation*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Presson was a pretrial detainee, not a prisoner, at the time he was in the Ozark County Jail. "As a pretrial detainee, [Presson] [was] 'entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment.'" *Id.* (quoting *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)). "It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016).

"Deliberate indifference is more than negligence, more even than gross negligence. It may be found where medical care is so inappropriate as to evidence intentional maltreatment." *Johnson*, 929 F.3d at 575 (cleaned up); *see also Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness."). To succeed on his deliberate-indifference claim, Presson must "clear a substantial evidentiary threshold." *Johnson*, 929 F.3d at 576 (quoting *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010)). He must establish that "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Id.* at 575 (quoting *Hartsfield*, 371 F.3d at 457). Here, Presson clears the evidentiary bar.

a. *Serious Medical Need*

We have "defined a 'serious medical need' as 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Davis v. Buchanan*

*Cnty.*, 11 F.4th 604, 623–24 (8th Cir. 2021) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Construing the facts in the light most favorable to Presson, he has established that he suffered from "serious medical need[s]" at the time he was in the Ozark County Jail because his conditions were "diagnosed by a physician" and "requir[ed] treatment." *Id.* Specifically, Presson was diagnosed with a back injury, attention deficit disorder, gastroesophageal reflux disease, and insomnia. Medical professionals had prescribed cyclobenzaprine, Adderall, omeprazole, and Ambien to treat his conditions during the time that he was in the Ozark County Jail. Thus, Presson has established the objective component of deliberate indifference.

The defendants do "not controvert or dispute that at the time [Presson] was detained at the jail, he had [the aforementioned] valid prescriptions." *Presson*, 2022 WL 107105, at *5. Instead, the defendants have consistently argued that they are entitled to judgment as a matter of law because Presson provided no expert medical evidence of any adverse effect on his prognosis resulting from their allegedly unconstitutional acts. The district court rejected this argument, concluding that Presson "need not provide evidence of an 'adverse effect on his prognosis'" because his "constitutional claim rests on the misadministration and the withholding of his prescription medications—rather than a discrete constitutional claim based on a delay in treatment." *Presson*, 2022 WL 107105, at *6.

"When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the *objective seriousness* of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (first emphasis added) (internal quotation marks omitted). "A prisoner alleging a *delay* in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or

-11-

that these delays adversely affected his prognosis." *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (emphasis added) (quoting *Holden*, 663 F.3d at 342).

Here, Presson has not alleged that the defendants *delayed* providing treatment for his conditions. Instead, he alleges that they *misadministered* his prescribed Ambien and *withheld* giving him his prescribed cyclobenzaprine, Adderall, and omeprazole for already-diagnosed conditions. Furthermore, "submission of verifying medical evidence [is] unnecessary" when the "need for medical attention . . . would have been obvious to a layperson." *Hartsfield*, 371 F.3d at 457. Construing the facts in the light most favorable to Presson, Presson's "prescription medications—presented to the jail after [Presson's] arrival—and his complaints and visible adverse physical condition including pain and vomiting bile" sufficiently demonstrate Presson's serious medical need. *Presson*, 2022 WL 1071045, at *6 n.6.

b. *Deliberate Disregard*

We now turn to the subjective prong of the inquiry. "Under the subjective prong, to show deliberate indifference, the official must know of and disregard the inmate's serious medical need." *Davis*, 11 F.4th at 624 (cleaned up). Presson "must establish a mental state [of the defendants] akin to criminal recklessness: disregarding a known risk to the arrestee's health." *Id.* (cleaned up). "In other words," Presson has to demonstrate "that the [defendants] recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Id.* (emphasis added) (quoting *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)). "The factual determination that a prison official had the requisite knowledge of a substantial risk may be inferred from circumstantial evidence or from the very fact that the risk was obvious." *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997).

"Generally, [an] actor manifests deliberate indifference by intentionally denying or delaying access to medical care, or *intentionally interfering with treatment or medication that has been prescribed*." *Davis*, 11 F.4th at 624 (emphasis added)

(internal quotation marks omitted). "When an official denies a person treatment that has been ordered or *medication that has been prescribed*, constitutional liability may follow." *Dadd*, 827 F.3d at 757 (emphasis added).

Viewing the facts in the light most favorable to Presson, the defendants knew of and disregarded Presson's serious medical need. First, the defendants "were aware of [Presson's] serious medical needs," *Dadd*, 827 F.3d at 755, based on the following evidence: (1) Presson's brother delivered Presson's prescriptions to the Ozark County Jail; (2) Presson told Reed that he needed his long-term prescription medications, including Adderall, omeprazole, Ambien, and "muscle relax[ants] for a back injury," *Presson*, 2022 WL 107105, at \*2; (3) "while [Presson] was detained and asking for his prescription medications, . . . Reed told him, '[y]ou will get them tomorrow but tomorrow never comes,'" *id.* at \*11 (third alteration in original); (4) Lane told Presson that it was Reed who had to approve Presson's medications; (5) Lane was one of the deputies who administered medication to Presson; and (6) Presson "begged [Deputy] Jeff Lane multiple times a day to get [his] medication but [Lane] refused," *id.* at \*7.

Second, the defendants disregarded Presson's serious medical need by (1) not giving Presson his cyclobenzaprine prescription medication or his Adderall prescription; (2) misadministering his Ambien prescription by giving him Ambien "'multiple times a day' including at times other than bedtime and for more than 7–10 days" despite Presson "repeatedly" telling them that "his Ambien prescription was for one tablet per day at bedtime, as needed, and not for more than 7–10 days at a time," *id.* at \*2; and (3) denying Presson his omeprazole from October 2 until October 17, 2018, when he was taken to a local medical clinic for complaints of "shortness of breath, chest pain, throwing up acid, and . . . his right lung fe[eling] on fire" and the medical clinic doctor recommended that Presson "restart [o]meprazole," *id.* (cleaned up). The failure to give cyclobenzaprine, Adderall, and omeprazole and the misadministration of Ambien constitute disregard of Presson's serious medical needs.

The asserted existence of a "controlled substance policy" does not alter this result. The defendants claim that they did not provide Presson a controlled substance, like Adderall, just as they denied controlled substances to all other inmates at the jail. As previously explained, the jail manual does not include this "controlled substance policy." In fact, a portion of the jail manual actually provides: "Medications: Jail staff will administer legally prescribed medications according to the prescribing physicians. Jail staff will not deviate from the physician's instructions." *Presson*, 2022 WL 107105, at *2. Ultimately, the controlled substance policy does not impact our analysis of Presson's constitutional claim. *Cf. Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) ("[T]he issue is whether the government official violated the Constitutional or federal law, not whether he violated the policies of a state agency."). Instead, it is the defendants' "knowing failure to administer prescribed medicine . . . itself [that] constitute[s] deliberate indifference." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006); *see also Dadd*, 827 F.3d at 757. "The decision not to give [Presson] the physician[-]prescribed [Adderall] was based on the policy of the detention center that it was a [controlled-substance] free facility. No exercise of medical judgment was involved." *McAdoo v. Martin*, No. 6:13-cv-06088, 2017 WL 1091348, at *7 (W.D. Ark. Mar. 21, 2017) (determining prison officials were deliberately indifferent in refusing to give plaintiff a pain medication prescribed by emergency room doctors based on the detention center's policy as a "narcotic free facility"), *aff'd in part and rev'd in part on other grounds*, 899 F.3d 521 (8th Cir. 2018).[6]

---

[6]*Cf. Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (finding defendants entitled to summary judgment because they were not deliberately indifferent to plaintiff's medical needs when the record showed they "responded promptly" to plaintiff's requests for medical and psychiatric care; initially followed the advice of which medications plaintiff should be given and when they should be given; followed the advice of a subsequent examining physician; administered medications as prescribed; and refilled those prescription medications until plaintiff left the detention center).

For similar reasons, the defendants' argument that they were not deliberately indifferent to Presson because his prescriptions for cyclobenzaprine and Adderall would have expired "very soon into detention anyway" also fails. Appellants' Br. at 13. Again, the defendants' knowing failure to give these medications, as prescribed, is sufficient to show deliberate indifference. *See Phillips*, 437 F.3d at 796.

The defendants further argue that they were not deliberately indifferent to Presson's serious medical needs because they provided him with medical care when he experienced chest pain and vomiting and later overdosed on Ambien. But this is not Presson's claim. Presson claims their deliberate indifference resulted from failing to administer or misadministering his prescriptions. This failure caused adverse physical and mental symptoms and effects that, in turn, required acute medical treatment and care.

Furthermore, the facts construed in the light most favorable to Presson show that Reed and Lane were responsible for the failure to administer or misadministration of the prescriptions. Lane is recorded as administering medication to Presson. His badge number appears on the medication log on nine occasions. Notably, the medical log does not include a record of medication being given in the morning on several days: October 15 through October 19, 2018; October 22 through October 26, 2018; October 29, 2018; November 2, 2018; November 6, 2018; November 9, 2018; and November 12 through November 14, 2018; and no medication is recorded as being given at any time on November 8, 2018. According to Deputy Lane, he could not administer medication to Presson without Reed's approval; in turn, Reed told Presson that "[y]ou will get them [the medication] tomorrow but tomorrow never comes." *Presson*, 2022 WL 107105, at *11 (first alteration in original).

In summary, Presson has sufficiently demonstrated that "[t]he defendants were subjectively aware of but disregarded a serious medical need." *Id.* at *9. The facts

construed in the light most favorable to Presson show that the "[d]efendants, who are not medical personnel, substituted their controlled substance 'policy' and their schedule for administering [or failing to administer] medication for that of a treating physician." *Id*.

### 2. *Clearly Established*

"We [now] turn our inquiry to the clearly established prong of the analysis. A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Furlow v. Belmar*, 52 F.4th 393, 404 (8th Cir. 2022) (internal quotation marks omitted). This means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted). "We do not require a case directly on point. . . . Clearly established law is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) (cleaned up).

"Showing that a right was clearly established requires identifying controlling precedent with a close correspondence to the particulars of the present case." *Rusness v. Becker Cnty.*, 31 F.4th 606, 615 (8th Cir. 2022). In other words, "the right in question must be construed fairly narrowly and that facts in the present case must align with facts in precedent." *Id.* Indeed, "[t]he Supreme Court has cautioned courts not to define clearly established law at too high a level of generality." *Ivey v. Audrian Cnty.*, 968 F.3d 845, 849 (8th Cir. 2020) (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). "We have recognized this principle in cases involving deliberate indifference to a pretrial detainee's objectively serious medical needs." *Id.* (citing *Ryan v. Armstrong*, 850 F.3d 419, 426–27 (8th Cir. 2017); *Barton v. Taber*, 820 F.3d 958, 966 (8th Cir. 2016)). Our obligation is to "close[ly] examin[e] . . . the facts to determine what right is at issue and thus whether qualified immunity is appropriate." *Rusness*, 31 F.4th at 615.

*Dadd* makes "[i]t . . . clear that [(1)] a pretrial detainee has a constitutional right to adequate medical care while in custody," 827 F.3d at 756, and that (2) "constitutional liability may follow" "[w]hen an official denies a person treatment that has been ordered or medication that has been prescribed," *id.* at 757. In *Dadd*, the pretrial detainee "arrived at the jail with instructions from his doctor in the form of a Vicodin prescription, and the deputies and the jail nurse ignored his complaints of pain and requests for treatment. When [the pretrial detainee] was prescribed additional medication by a jail doctor, he did not receive it." *Id.* at 757. We held that "the defendants had fair warning about the unconstitutionality of a failure to provide pain medication for serious dental conditions." *Id.* Thus, the pretrial detainee's "right to adequate treatment was clearly established, and the district court properly denied the defendants qualified immunity." *Id.*

Here, the "facts in the present case . . . align with [the] facts in [*Dadd*]," *Rusness*, 31 F.4th at 615, and gave Reed and Lane "fair warning" that misadministering prescriptions or failing to provide Presson with his prescribed medication violated Presson's constitutional rights, *Dadd*, 827 F.3d at 757. *Dadd* involved the failure to provide prescribed medication to the pretrial detainee despite the defendants' knowledge that the pretrial detainee was prescribed a pain reliever following his dental surgery and the pretrial detainee's repeated complaints of pain to the defendants. The same is true here. Reed and Lane failed to administer or misadministered the medication to Presson despite knowing a doctor prescribed them and despite Presson's repeated requests for his medication.

Construing the facts in the light most favorable to Presson, his "right to adequate treatment was clearly established, and the district court properly denied the defendants qualified immunity." *Id.*[7]

_____

[7]The defendants also argue that the district court erred in denying their motion for summary judgment on Presson's claim for punitive damages because no evidence

-17-

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

exists of their evil intent, malice, or callous indifference. "Because a jury must decide whether [Reed] and [Lane] acted with deliberate indifference, the district court properly refused to dismiss [Presson's] claim[] for punitive damages against them." *Erickson v. Holloway*, 77 F.3d 1078, 1081 (8th Cir. 1996).