# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2540

_____

Margaret Starks

*Plaintiff - Appellant*

v.

St. Louis County

*Defendant - Appellee*

Faisal Khan, in his individual capacity; Delores J. Gunn, in her individual capacity; Melissa Susman, in her individual capacity; William Trachsel, in his individual capacity

*Defendant*s

Cedric Ivy, in his individual capacity

*Defendant - Appellee*

Connie Heitman, in her individual capacity

*Defendant*

Reginald Tinoco, in his individual capacity; Debra Tucker, in her individual capacity; Rita Hendrix, in her individual capacity; Faye Crancer, in her individual capacity

*Defendants - Appellees*

_____

Before BENTON, GRASZ, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Drexel Starks experienced heroin withdrawal while jailed at the St. Louis County Justice Center. He later died at the hospital. His mother, Margaret Starks, sued under 42 U.S.C. § 1983, alleging that jail nurses Reginald Tinoco and Debra Tucker and correctional officer Cedric Ivy were deliberately indifferent to his serious medical need. She also sued nurse supervisors Rita Hendrix and Faye Crancer and St. Louis County for failure to train or supervise and the County for an unlawful policy, practice, or custom of denying detainees medical care.[1] The district court[2] granted the defendants' motion for summary judgment, holding that Margaret failed to establish a violation of Drexel's constitutional rights. Reviewing *de novo*, we affirm. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (standard of review).

Drexel was arrested for possession of a controlled substance while on parole and taken to jail on August 4, 2015. He told the jail nurse that he was "dope sick" and had used heroin the day before. She noted he was well-hydrated but had symptoms of Acute Withdrawal Syndrome (AWS), so she put him on withdrawal protocol, which included "comfort" medication and twice daily nurse assessments.

---

[1]Claims against defendants Khan, Gunn, Susman, Heitman, and Trachsel were voluntarily dismissed below.

[2]The Honorable Ronnie White, United States District Judge for the Eastern District of Missouri, now retired.

-2-

Nurses assessed Drexel three times during the first 24 hours. He had AWS symptoms of dry mouth and unsteady gait but showed signs of improvement on the morning of August 5, with a nurse noting a moist mouth and steady gait.

There is no evidence of another assessment. Nurses Tinoco and Tucker were working in Drexel's unit during the following shifts, but testified that they never interacted with him, despite the withdrawal protocol requiring nurses to "call inmate[s] out to assess." The protocol was explicit: "NO CALL, NO SHOW not accepted. Officer MUST get inmate."

Around 2:00 p.m. on August 6, a correctional officer reported that Drexel was suffering from withdrawal. Drexel was on the floor with a small pool of saliva by his face. A nurse asked what was wrong and he replied, "I'm okay." Although he responded to several more questions, she could not find a pulse or blood pressure reading. She called a nurse practitioner, and Drexel was transferred to the infirmary about forty minutes later. He was then moved to the hospital and pronounced dead at 3:51 p.m. The medical examiner determined that the cause of death was "unexpected death in patient withdrawing from heroin and cocaine with dehydration and cardiac dysrhythmia."

Margaret alleges that jail staff were deliberately indifferent to Drexel's serious medical need in violation of the Fourteenth Amendment. *See Jackson*, 756 F.3d at 1065 (applying the Eighth Amendment's deliberate indifference standard to Fourteenth Amendment claims by pretrial detainees). To prevail, she must show that Drexel had an objectively serious medical need and that defendants "actually knew of, but deliberately disregarded, such need." *Cannon v. Dehner*, 112 F.4th 580, 586 (8th Cir. 2024) (citation omitted). An objectively serious medical need is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Id.* (citation omitted). "A medical condition is not *per se* obvious to a layperson because it later results in death." *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 483 (8th Cir. 2008). Deliberate indifference is "akin to criminal recklessness." *Cannon*, 112 F.4th at 587.

-3-

No reasonable jury could find an objectively serious medical need here based on medical evidence. There was no physician's diagnosis, and the nurse's intake assessment is not enough. *See id.* at 586 (nurse treatment prior to a doctor's initial diagnosis did not establish a serious medical need unless the need was obvious to a layperson); *see also Jones,* 512 F.3d at 482 (where prisoner had been examined by a nurse, she "was not diagnosed by a physician as requiring treatment").

That means Drexel's "condition must have been so obvious that a layperson would easily recognize the need for treatment." *Jones*, 512 F.3d at 482. We don't think the evidence, viewed in the light most favorable to Margaret, meets this standard. AWS was common among detainees. When asked whether AWS was serious, Margaret's expert witness testified: "Well, it's not very comfortable . . . I can't ever remember seeing a patient die from it." Margaret points to evidence that Drexel vomited on August 4 and complained of dehydration on August 6, but Nurse Hendrix testified that all inmates suffering from AWS experience vomiting, often causing dehydration.

The nurse assessments showed Drexel's AWS symptoms were improving. There is nothing in the record indicating that Drexel's condition was worse than an average AWS case before 2:00 p.m. on August 6.[3] *See Jones*, 512 F.3d at 482–83 (no objectively serious medical need where an inmate "was unable to stand or walk under her own power, was 'google-eyed' and unresponsive, was rolling on the ground while grunting and groaning, was bleeding from the mouth, smelled as if she had urinated on herself, and was breathing at a very rapid rate"); *see also Grayson v. Ross*, 454 F.3d 802, 810 (8th Cir. 2006) (no objectively serious need where inmate's methamphetamine use resulted in death but inmate's behavior did not make it obvious to a layperson that inmate required immediate medical attention). And, given that Drexel's condition did not appear worse than the average case of AWS, "the prison officials had no background knowledge that made it obvious that these

_____

[3]The nurse who responded to Drexel's cell at 2:00 p.m. on August 6 is not a defendant, and there is no allegation that she was deliberately indifferent to Drexel's medical needs.

symptoms required medical attention" and "a reasonable jury could not find that [Drexel] had a medical need so obvious that a layperson would easily recognize the need for a doctor's immediate attention." *Jones*, 512 F.3d at 483.

Margaret also points to Hendrix's estimate that twenty inmates with AWS died in the past seven years. But that estimate was given during a series of questions asking Hendrix to speculate about inmates who died at hospitals after receiving proper assessments, without specifying the causes of death. *See* Fed. R. Civ. P. 56(c)(1)(B). And county records contradict her claim. Besides Drexel, 11 inmates died between 2008 and 2015; no cause of death was AWS or drug withdrawal.[4]

There is evidence that the nurses negligently violated the "no call, no show" policy, but negligence is not "akin to criminal recklessness." *Cannon*, 112 F.4th at 587. We have found withholding medication to be deliberate indifference, but those cases involved actual knowledge of the inmate's serious medical need and needed medication was intentionally withheld. *See, e.g.*, *Dadd v. Anoka Cnty.*, 827 F.3d 749 (8th Cir. 2016) (plaintiff arrested after serious dental surgery and officers ignored his request for his doctor-prescribed pain medication despite knowing his need for it); *Presson v. Reed*, 65 F.4th 357 (8th Cir. 2023) (deliberate indifference where defendants knew about plaintiff's need for prescription medications but refused care saying, "you will get them tomorrow but tomorrow never comes"). Here, Tinoco and Tucker testified that they never interacted with Drexel. At most they knew that Drexel was on the AWS protocol and that his symptoms had been improving. *See Hott v. Hennepin Cnty.*, 260 F.3d 901, 907–08 (8th Cir. 2001) (evidence was insufficient to show suicide presented so great a risk that failure to conduct checks according to jail policy amounted to deliberate indifference); *see also Cannon*, 112 F.4th at 587 ("Grossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." (citation omitted)).

---

[4]Two of the inmates died from unknown causes.

Margaret similarly argues Officer Ivy was deliberately indifferent by denying or interfering with Drexel's medical treatment and not taking him to see the nurse. It's true that the record indicates Officer Ivy knew Drexel refused to cooperate with medical, refused a legal visit, said he would not get up, and refused to eat his lunch. But this evidence is insufficient for a reasonable jury to find that Officer Ivy knew about Drexel's medical condition, let alone that he "disregarded an excessive risk to [Drexel's] health or safety." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (cleaned up).

Because there is no constitutional violation, Margaret's claims against Hendrix, Crancer, and the County fail as a matter of law. *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) ("This circuit has consistently recognized as a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (citation omitted)). Margaret suggests that "a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable," *Webb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018) (where the individual officers had immunity, the question of whether their acts were unlawful remained open); *see also Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002) ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."), but those cases "do not suggest that municipal liability may be sustained where there has been no violation of [Drexel's] constitutional rights as a result of action by the municipality's officials or employees," *Speer*, 276 F.3d at 986.

Affirmed.

_____